## WILLIAM POLLARD *v.* THE STATE.

1. CRIMINAL LAW. *Murder.  Alibi.  Reasonable doubt.*
   Where to a charge of murder the defence is an *alibi*, if the evidence in support of the *alibi* is sufficient to raise a reasonable doubt in the minds of the jury, the accused is entitled to an acquittal.

2. SAME. *Affirmative defence.  Burden of proof.  Does it shift.  Reasonable doubt.*
   *Quære*, Is there such a thing as an affirmative defence to a criminal charge, which, at any time during the trial, shifts the burden of proof from the State to the accused? *Semble*, If there be, the accused is entitled to an acquittal when he has raised in the minds of the jury a reasonable doubt upon the evidence as to the affirmative matter.

ERROR to the Circuit Court of Tippah County.

Hon. W. D. BRADFORD, Judge.

This was an indictment against William Pollard, for the murder of Frederic Carpenter, of which charge Pollard was convicted. The testimony for the State was altogether circumstantial, and the circumstances were these: On the 10th March, 1875, about eleven o'clock A.M., the dead body of Carpenter was found, shot through the head. Certain tracks near the body were identified as the tracks of Pollard, who had shortly before been seen near the place, and a scrap of paper found there was proved to correspond with the wadding drawn from Pollard's gun. There was a branch near the locality, and a stain of mud on Pollard's knee, corresponding with the impression on the bank, seemed to indicate that he had fallen as he jumped across the branch while fleeing from the scene of the murder. These circumstances, with proof of threats by Pollard that he would kill Carpenter, because Carpenter had shot him in a difficulty shortly before, frequently reiterated by him in the strongest terms to a great number of persons, constituted the groundwork of the prosecution. The shot supposed to have killed Carpenter was heard by several witnesses, who stated it was fired between nine and half-past ten o'clock A.M., on the 10th March, 1875.

The defence as proved was that Pollard was at his home on the 10th of March, 1875, until about half-past ten o'clock A.M., when he left, to get from his father's some soda to make soap; that he reached his father's, unarmed, about fifteen minutes to eleven, got the soda, and returned home within three-quarters of an hour after he had left, and remained at home, playing the jews'-harp for his children, until dinner. Pollard's house was two miles from the scene of the murder. The house of his father was a half-mile from Pollard's.

The court instructed the jury that, in order to support the *alibi*, it is not enough that the evidence relating thereto renders the guilt of the accused improbable, but it is essential that the testimony should be so conclusive, and so cover the whole time involved, as to render it impossible for the accused to have committed the offence. The instructions announcing that doctrine present the chief point in the case. They are set out in the opinion of the court, and, with their numbers, in the briefs of counsel.

*W. M. Inge*, for the plaintiff in error, made an able oral argument.

*Inge & Inge*, on the same side, filed an elaborate brief, making, among others, the following points: —

The humanity of our law is such that every person charged with crime is presumed to be innocent, that he can stand with lips sealed before his accusers with no word in his defence, and is entitled to an acquittal, unless the State, by the evidence produced, establishes his guilt beyond a reasonable doubt. The burden of proof is always on the party who asserts the existence of any fact which infers legal accountability, and the burden of proof in criminal cases never shifts from the State upon the defendant. Such a thing as an affirmative defence we do not believe is anywhere asserted and successfully maintained under our laws. It devolves upon the State to prove all the material allegations in the indictment; and if on the whole evidence the jury have a reasonable doubt as to the defendant's guilt, they are bound to acquit.

When a *prima facie* case is made out, the burden of proof is not thereby shifted on the defendant. He is not bound to restore himself to the presumption of innocence which invested

him at the commencement of the trial. That does not take
away from the defendant the presumption of innocence; but
the presumption remains in aid of any other proof which the
defendant may offer to rebut the *prima facie* case made out by
the State. It has been frequently judicially declared that
establishing a *prima facie* case in a criminal prosecution does
not change the burden of proof. *State* v. *Flye*, 26 Me. 312;
*Commonwealth* v. *Kimball*, 24 Pick. 373; *Commonwealth* v.
*Dana*, 2 Met. 340; *Ogletree* v. *State*, 28 Ala. 693; *Common-
wealth* v. *McKie*, 1 Lead. Crim. Cas. 302. The jury are not
bound to convict upon a *prima facie* case. *Swallow* v. *State*, 22
Ala. 20. In the case of the *United States* v. *McClare*, 17 Law
Rep. 439, the defendant was indicted for an assault and bat-
tery. The blow was admitted, but the defendant claimed it
was accidental. The court ruled that the State must establish
the criminal intent with which the blow was given, or the
defendant was entitled to an acquittal..

The charges in the court below given for the State, and in
those refused for the defendant in relation to an *alibi*, seemed
to us to have entirely ignored these well-established principles
of law.

Those charges given for the State are in the following lan-
guage : Fifth charge. The court charges the jury that, when-
ever the defence of an *alibi* is interposed, it is essential that
it should cover the whole time involved in the transaction
sought to be disproved, so as to render it impossible that the
defendant could have committed the offence alleged against
him ; and if the jury believe from the evidence in this case
that the *alibi* interposed by the defendant fails to meet this
requirement of the law, so as to render it impossible for him
to have committed the crime at the time charged, they will
find him guilty as charged, provided they are satisfied from
all the evidence in the case he is guilty.

This charge shifts the burden of proof from the State upon
the defendant, where he interposes the defence of an *alibi*, and
requires the defendant to show by proof affirmatively that it
was impossible for him to have committed the crime as charged,
no matter what reasonable doubts may arise in the minds of
the jury from the evidence in the case as to the defendant's

presence at the scene of crime. It matters not if they have grave doubts whether the defendant was present when the crime was committed. Under the charge they must still find him guilty, although they cannot say from the proof he was not at another place when the crime was committed; for proof of an *alibi*, to amount to any defence under the charge, must go to the extent of convincing the jury that it was utterly impossible for the defendant to have committed the crime as charged. In other words, the defendant must establish his innocence beyond all doubt: it does not, where an *alibi* is interposed, devolve upon the State to prove his guilt.

The defendant's presence at the scene of crime is certainly a material circumstance in the case, for how could he commit the offence unless he was present? In the case of *Commonwealth* v. *Francis*, Thacher's Crim. Cas. 246, the court says, "If one material fact in the chain fails in proof, the whole fails;" and in the case of *People* v. *Videto*, 1 Park. Crim. Rep. 603, the court says, "Each circumstance should be satisfactorily established by evidence, and should not be presumed by an assumption of the fact that the accused is guilty; if the existence of any circumstance against the accused is not established beyond all reasonable doubt, the jury in favor of life should reject such circumstance."

In the case of *People* v. *Cunningham*, 6 Park. Crim. Rep. 612, 613, the court says, "Another consideration is that each fact which is necessary to the conclusion of guilt must be distinctly and independently proved by competent evidence. . . . If any other fact necessary to the conclusion is inconsistent with the hypothesis of the guilt of the accused, it breaks the chain of circumstantial evidence upon which the inference depends, and however plausible or apparently conclusive the other circumstances may be, the charge must fail. . . . It is not sufficient that these facts and circumstances create a probability, though a strong one, of guilt;" but they must, as a whole, be conclusive in their nature and tendency, producing in effect a reasonable and moral certainty that the defendant, and no one else, committed the offence. How could he commit it unless he was present at the scene of crime? And must

not the State establish that very material fact, to the exclusion of *all reasonable doubts?*

All that is required of the defendant to entitle him to an acquittal is from the evidence to raise a reasonable doubt as to his guilt, no matter upon what point in the case that doubt may arise, whether defence or *alibi,* for the burden of proof remains upon the State where an *alibi* is set up in defence, as in all other cases ; and all that is required of the defendant where that defence is interposed is to raise a reasonable doubt as to his guilt upon the evidence in the minds of the jury. Both reason and authority support this conclusion. *Fife* v. *Commonwealth,* 29 Penn. St. 429 ; *Hopps* v. *People,* 31 Ill. 393 ; *Miller* v. *People,* 39 Ill. 457.

The second charge given for the State upon the subject of an *alibi* asserts the startling doctrine that it is not enough that the evidence upon the *alibi* renders the guilt of the accused impossible ; although that is the case, they may still convict, if, looking to all the evidence in the case, the jury are satisfied of his guilt.

The charge seems to assert the doctrine that if the evidence in the case, independent of the evidence on the subject of an *alibi,* satisfies the jury of the guilt of the defendant, they may disregard the evidence on the subject of an *alibi,* notwithstanding that evidence renders the guilt of the defendant perfectly impossible, and find him guilty. That is clearly not the law ; for it is tantamount to saying an *alibi* does not amount to any defence, when the authorities all agree that an *alibi,* when established, renders the fact of the prisoner's presence at the scene of crime improbable on its face, and incredible *in toto ;* and hence the conclusion is strictly unavoidable and necessary that he could not have committed the offence charged. Burrill on Circumstantial Evidence, 512.

Whenever a thing is improbable, it is doubtful ; and the defendant is entitled to all reasonable doubts. Again, whenever a thing is not improbable, it is probable ; and whenever there is a probability of innocence, there is a doubt of guilt ; and whenever there is a reasonable doubt of guilt, the defendant is entitled to that doubt. The charges refused for the defend-

ant in relation to an *alibi*, we are satisfied, the court will decide are the law; and we will submit them to its enlightened judgment without argument.

*W. S. Featherston*, on the same side, made an oral argument of great learning and power, discussing the question, whether, in a criminal case, the burden of proof ever shifts from the State; and, if there be such a thing as an affirmative defence, whether the accused is not entitled to his acquittal when he shall have succeeded in raising in the minds of the jury a reasonable doubt arising from the evidence as to the affirmative matter set up by him.

*Featherston & Harris*, on the same side, filed an elaborate and exhaustive brief, in which they reviewed the testimony and instructions at great length, contending, among other things, —

1. That the circumstances proved in this case were not sufficient to fix guilt on the accused; that they did not exclude a reasonable doubt of his guilt; and that all of them were consistent with the hypothesis of his innocence, and some of them totally inconsistent with the hypothesis of his guilt.

The threats were not contemporaneous with the fact which they were offered to explain, nor did they so connect themselves with the killing as to illustrate who was the author of the deed. 1 Greenl. Evid. § 108; *Newcomb* v. *State*, 37 Miss. 383; *Holman* v. *Murdock*, 34 Miss. 286; *Scaggs* v. *State*, 8 S. & M. 722; *Meek* v. *Perry*, 36 Miss. 190; *State* v. *Tilly*, 1 Iredell L. 435. The testimony as to motive is weak. Other persons, the evidence shows, had been shot and injured by Carpenter. He was a violent man, and had many and bitter enemies. Any of them may be the murderer. Mr. Starkie, p. 849, says testimony as to a man's motive for committing a crime is in itself " exceedingly weak and inconclusive."

The fact that Pollard made no effort to escape, but, when accused of the crime, remained quietly at home, raises a presumption of his innocence. The tracks, the paper, and the mud on Pollard's knee are trifles, magnified only by public excitement into evidences of guilt.

The *alibi* was clearly and conclusively established. The witnesses were reliable, their testimony distinct and probable, and no effort was made to contradict or impeach them. And the facts which they proved so covered up the time during the morning of the killing as to render it impossible for Pollard to have been an actor in the murder.

2. Counsel then reviewed the instructions given for the State, and those asked for the defendant and refused, contending that the action of the court on the instructions misled the jury, and caused the erroneous verdict. The court erroneously refused to charge that Pollard's not fleeing affords a strong presumption of innocence. *United States* v. *Armstrong*, 2 Curtis, 446 ; Roscoe's Crim. Evid. 18 ; Wharton Am. Crim. Law, 269.

The court erroneously refused the twenty-eighth charge asked for the accused, in effect that the hypothesis of his guilt must be consistent with the facts proved ; Starkie on Evid. (9th ed.) 755, 756 ; as also the thirty-first charge, designed to instruct the jury as to the slight value of extra-judicial and casual observations made by the accused as to his feelings and intentions towards Carpenter. Starkie on Evid. 730 ; 1 Greenl. Evid. §§ 229, 230 ; Wharton Am. Crim. Law, 277, 278.

The thirty-second charge, announcing the rule as to inconclusive probabilities, was also erroneously refused. Starkie, 752, 753 ; *John* v. *State*, 24 Miss. 569. And the twenty-sixth, stating the proposition that he must be presumed innocent until his guilt was proved. 1 Archbold Crim. Pl. & Pr. 385, 386 ; Roscoe's Crim. Evid. 16, 17 ; 1 Greenl. Evid. §§ 34, 35 ; Wharton Am. Crim. Law, 364, 365 ; *Browning* v. *State*, 30 Miss. 656 ; *Algheri's Case*, 25 Miss. 584.

On the *alibi*, the charges given were erroneous, and those refused were correct. The second and fifth charges for the State announced an erroneous rule ; and the eighth repeated it. The defendant's charge, numbered 30, refused by the court, is as follows : " An *alibi*, — that is, the absence of. the prisoner from the scene of the crime at the time of its commission, — when established to the satisfaction of the jury, is the most conclusive character of evidence ; and if the jury believe

an *alibi* has been satisfactorily established by the evidence in this case, they should acquit the defendant." It does seem to us that this charge embodies a self-evident proposition, and renders it unnecessary for us, therefore, to refer to authorities in support of it. What could be better and more satisfactory proof of the innocence of the accused than the fact that he was not at the place of the killing. If not there, of course it is impossible that he could be the guilty party. No charge given to the jury embraces the principle as fully and specifically as the one under discussion. The jury had a clear right to know, or, rather, the defendant had a right to demand that they should know, the full extent and meaning of an *alibi*, and its consequent effect ; and the failure and refusal of the court to give them the necessary and proper information was disastrous to the defendant. We suppose that no one ever seriously doubted the correctness of the proposition, or that any court ever before refused to give such a charge.

*George E. Harris*, Attorney-General, for the State, made an oral argument, and filed an elaborate brief, making the following points : —

1. The facts in this case, though the evidence is circumstantial, are deemed to be of such a conclusive nature as to warrant the jury in finding a verdict of guilty. A previous grudge, a former difficulty, numerous threats at different times and places and to different persons, made by the accused against the life of the deceased, are all evidences of malice, and make the killing murder beyond all question. The only question is, whether the accused did the killing. So strong and overpowering were the circumstances, that the accused was driven to the expedient of setting up, or attempting to prove, an *alibi*. This was sustained mainly by the testimony of the wife and mother of the accused, but contradicted by the other facts and circumstances in the case.

2. As to the proper application of circumstantial evidence, see *McCann* v. *State*, 13 S. & M. 471.

What circumstances will amount to proof can never be a matter of general definition. 13 S. & M. 202; 33 Miss. 48. See also 13 S. & M. 494, 495.

The previous difficulty and the threats were properly admitted in evidence. *Newcomb's Case*, 37 Miss. 399, presented a very different question; as also the case of *Holman* v. *Murdock*, 34 Miss. 286; 1 Greenl. Evid. § 108. In *Scrugg's Case*, an attempt was made to prove what the accused had said as a part of the *res gestœ*. No such question is here presented.

Mr. Wharton says, in his work on Homicide (ed. of 1875), § 693: "Declarations of intentions and threats are admissible in evidence, not because they give rise to a presumption of law as to guilt, which they do not, but because from them, in connection with other circumstances, and on proof of the *corpus delicti*, guilt may be inferred. Evidence of this kind, for this purpose, is always admissible."

3. Nine instructions were asked for the State, and all given. The defendant asked thirty-three instructions. The first twenty-four were given, the last nine were refused. It is insisted that the eighth instruction for the State is erroneous. It reads as follows: —

"It is necessary to the satisfactory proof of an *alibi* that it should cover the whole of the time of the transaction in question, so as to render it impossible that the party accused could have committed the offence. It is not enough that such evidence renders the guilt of the accused improbable, if, looking to all the evidence in the case, the jury are satisfied beyond reasonable doubt that the accused is guilty as charged." If there is any language in this instruction that is objectionable, it is fully explained by the latter clause.

The authorities are not altogether agreed as to the amount of testimony necessary to establish an *alibi*. Mr. Wharton, in his work on Homicide (2d ed.), § 652, says: "If the prosecutor's case leaves a reasonable doubt as to whether the defendant was concerned in the guilty act, it would be agreed on all sides that the defendant should be acquitted. If so, it is hard to understand why such a conclusion should not follow where there is a reasonable doubt as to the physical possibility of the defendant's being so concerned." He then cites the opinion of Justice Shaw in *Webster's Case*, 5 Cushing, 295, 319, and gives the language in a note (on same page), and cases

there cited, which seem to fall short of supporting Mr. Wharton's view of the question. Chief Justice Shaw says: " This is a defence often attempted by contrivance, subornation and perjury. The proof, therefore, offered to sustain it is to be subjected to a rigid scrutiny, because, without attempting to control or rebut the evidence of facts sustaining the charge, it attempts to prove affirmatively another fact, wholly inconsistent with it; and this defence is equally available, if satisfactorily established, to avoid the force of positive, as of circumstantial evidence. In considering the strength of the evidence necessary to sustain this defence, it is obvious that all testimony tending to show that the accused was in another place at the time of the offence is in direct conflict with that which tends to prove that he was at the place where the crime was committed, and actually committed it. In this conflict of evidence, whatever tends to support the one, tends in the same degree to rebut and overthrow the other; and it is for the jury to decide where the truth lies." In a recent case in Texas (*Black* v. *State*, 37 Texas, 388), in which this plea was set up, Ogden, J., says : " We think that whenever this defence is set up to an accusation . . . it demands a patient, careful and scrutinizing examination by both court and jury. But we are clearly of opinion that when a defence of this character is attempted to be set up, it devolves upon the defendant to prove that defence to the satisfaction of the jury, if he expects to be benefited thereby. Where the prosecution has made out a case of guilt beyond a reasonable doubt, the burden of proof is then changed, and it devolves upon the defendant to establish his innocence by proof." In *Vincent* v. *State*, 24 Iowa, 578, Vincent was indicted for the murder of Claiborn Showers. The dead body of the deceased was found, and one defence set up was, that the body found was not the body of Claiborn Showers, that he was afterwards seen by four witnesses, at different times and places. Commenting on this defence, the court says : " This is termed an *alibi* of the alleged deceased, in the instructions of the court and argument of counsel, and the jury were instructed that, to sustain it, the same weight of evidence was necessary as to sustain the *alibi* of the prisoner. This, it is urged, is error. The *alibi* of the prisoner and

the existence in life of Claiborn Showers at the time of the alleged murder are each independent propositions, totally inconsistent with the guilt of the prisoner. It is evident the burden of proof in each rests upon the prisoner; for neither, against *prima facie* evidence of its corresponding inconsistent proposition of the prosecution, will be presumed. These defences, then, must be sustained by the prisoner, and the evidence necessary to sustain either of them must be sufficient to outweigh the proof tending to establish the contradictory hypothesis." If this be the correct doctrine, the affirmative proposition must be established by proof, and it is not enough if the defendant's testimony on this proposition merely raises a reasonable doubt in the minds of the jury.

All the instructions will be construed together as *in pari materia*, one as modifying the other, so as to see whether, as an entirety, they correctly lay down the law. *Evans* v. *State*, 44 Miss. 775. The court is not bound to repeat instructions. 39 Miss. 110; 7 How. (Miss.) 294; 44 Miss. 731.

In the case at bar we can attach but little importance to the testimony of the witnesses as to the *alibi*; they fail to fix the precise time of the killing. Unless the proof fixed the precise time of the offence, the *alibi* cannot be established with any degree of certainty. In the case at bar, the evidence on the part of the State established the prisoner's guilt from all the circumstances proved in the case, to the satisfaction of the jury, beyond a reasonable doubt; and the evidence to sustain the *alibi* did not outweigh it, or overthrow it, and the jury, in the language of Chief Justice Shaw, found "where the truth lies."

If it be sufficient proof of an *alibi* to create a doubt in the minds of the jury as to whether the accused was present at the time of the commission of the offence, it will ever be difficult to convict a defendant on circumstantial evidence. This defence sets up an affirmative proposition, and it must be proved and sustained by the party setting it up, like all other independent and affirmative matters. It is a question of first impression in this State; but I submit, upon the foregoing authorities, that the eighth instruction given at the instance of the State laid down the correct rule of law on the subject,

and especially as modified by the latter clause of the instruction.

CHALMERS, J., delivered the opinion of the court.

The appellant was convicted in the Circuit Court of Tippah County of the murder of Frederic Carpenter, and sentenced to confinement in the penitentiary for life. The evidence was circumstantial. The defence was rested on two grounds: 1. That the testimony was not of that conclusive character essential to warrant a conviction on circumstantial evidence; 2. An *alibi.* With regard to the second ground of defence, the court charged the jury, that, in order to support an *alibi*, it was essential that the testimony should so cover the whole time involved in the transaction as to render it impossible for the defendant to have committed the offence charged against him; and if the testimony adduced in support of it failed to meet this requirement of the law, so as to render it impossible for him to have committed the offence, the jury should find him guilty, if otherwise satisfied of his guilt.

By a subsequent instruction, the same doctrine was reiterated, with the additional declaration, that " it is not enough that such evidence (relative to the *alibi*) renders the guilt of the accused improbable, if, looking to all the evidence in the case, the jury are satisfied beyond reasonable doubt that he is guilty as charged." Of this latter charge it is to be remarked that it seems to contain a contradiction in terms which it is impossible to reconcile. The mind can rest upon no satisfactory conclusion, when informed that it is not enough that the guilt of the accused is rendered improbable by any particular testimony, if from all the testimony in the case the guilt is established beyond a reasonable doubt. If the particular testimony renders the guilt improbable upon the whole case, then it is a mental and moral impossibility that all the testimony should place the guilt beyond a reasonable doubt. It is probable that the confusion arises from the omission of the word " other " before the word " evidence " in the last clause of the instruction, and that the intention was to inform the jury that although the testimony in support of the *alibi* rendered the guilt of the prisoner improbable, he was still to be convicted, if by the other testi-

mony (leaving the *alibi* out of view) they were satisfied of
his guilt beyond a reasonable doubt.   This would make the
second instruction on this subject conform to the first, in
enunciating the doctrine, that, wherever an *alibi* is set up, it
devolves upon the party relying upon it to establish its abso-
lute truth, and that it is not sufficient that the jury may deem
that the probabilities are in favor of its existence.   The first
of the two instructions seems, indeed, to go beyond this, and
to inform the jury that the proof adduced in support of the
*alibi* must demonstrate the absolute physical impossibility of the
prisoner's guilt.   There are, undoubtedly, many respectable
authorities which teach a doctrine analogous to that thus enun-
ciated.   It is said by those holding this view, that by relying
upon an *alibi* the accused admits the force and truth of the tes-
timony adduced against him, and sets up a distinct affirmative
defence, which in its nature requires the demonstration of the
physical impossibility of guilt on his part in order to be effec-
tive, and that the burden of proving this affirmative defence
necessarily rests upon him who pleads it.

If we admit that in criminal prosecutions there is such a
thing as an affirmative defence, which shifts the burden of
proof from the State on to the defendant (as to which there
is great conflict of authority, and upon which it is unnecessary
now to express an opinion), it seems to us that the instruc-
tions under review are nevertheless erroneous.   It is undoubt-
edly true that an *alibi* is unproved, and is indeed no *alibi*,
unless the period covered by the proof supporting it em-
braces the time of the commission of the offence ; but does
it therefore follow that this physical impossibility of guilt
must be absolutely demonstrated ?   Is it not sufficient, if
the jury have been induced to think that the probabilities
are in its favor ?   Nay, more, is it not enough, if they have
been led to entertain a reasonable doubt as to the presence
or absence of the accused from the scene of crime ?   When
the State arraigns a citizen upon an indictment, it assumes
the burden of proving his guilt to the satisfaction of the
jury, to the exclusion of every reasonable doubt.   When
it has exhausted its testimony, or so much thereof as it
deems necessary, it rests its case, and the prisoner enters

upon his defence. The burden resting upon him — if we admit that the burden of proof ever devolves upon him — falls far short of that imposed upon the State. He has only to raise in the minds of the jury a reasonable doubt of his guilt, springing out of all the evidence in the case ; and whether he contents himself with rebutting the case made by the State, with all the legal inferences and presumptions deducible therefrom, or adopts what is called an affirmative defence, by undertaking to show exculpatory facts wholly disconnected from the proof made by the State, he is alike entitled to his acquittal when he has succeeded in raising this doubt. If upon an indictment for murder the accused raises a reasonable doubt as to whether the killing was not done in self-defence, all will agree that he must be pronounced not guilty. Upon what principle, then, is it that he is required to do more where he undertakes to establish his innocence by showing that he was not present at the homicide ? Certainly, absence from the scene is an answer to the charge, as perfect and complete as self-defence, and we can see no reason why a doubt of guilt engendered by proof of one should be inferior to that created by proof of the other.

If the ideas erroneously entertained, as we think, on this subject were confined to the defence of *alibi*, and were not common also in reference to other defences, styled affirmative, we would suppose that they grew out of the fact that the period covered by the *alibi* must embrace the time of the commission of the offence, and that, inasmuch as a perfect *alibi* will preclude the possibility of guilt, authors and courts have thereby been misled into declaring that the defence must fail, unless guilt is absolutely negatived. This is confounding the definition of an *alibi* with the opinion which the jury must entertain relative to its establishment. An *alibi*, proceeding as it does upon the idea that the accused was elsewhere at the date of the act, does, of course, if thoroughly established, preclude the possibility of guilt; but it does not therefore follow that the jury must be absolutely convinced of its truth. It is enough if the proof adduced in support of it, viewed in connection with all the testimony in the case, creates such a probability of its own truth as to engender

a reasonable doubt of the truth of the charge upon which the defendant is arraigned ; and this might be effected even though the jury did not feel positively assured either of the veracity of the witnesses or of the correspondence of time.   If, looking to all the evidence, inculpatory and exculpatory, they entertain a reasonable doubt of the prisoner's presence at and participation in the crime, they should acquit.   They are, of course, the exclusive judges of the credibility of the witnesses, and this may be destroyed as well by circumstances as by impeachment.

There is but one question — there can be but one question — in a criminal prosecution: Has the guilt of the defendant been established beyond a reasonable doubt ?   This is the *experimentum crucis* by which every juror must test the correctness of his verdict.   If this question cannot be answered in the affirmative, the defendant is entitled to an acquittal, regardless of how the doubt has been engendered, provided only it arises out of all the evidence in the case, considered as a whole.   Whether it springs from the weakness of the testimony adduced by the State, or the strength of that produced by the defendant; whether the defence consists in negativing the case made by the State, or in confessing and avoiding it (if this latter expression is appropriate to any defence admissible under a plea of not guilty), such a doubt must ever command a verdict of not guilty.

The views here announced are by no means universally held. Many cases will be found to the contrary ; but they are, we think, in accordance with the true spirit of the common law, and are the logical conclusions from its ancient and time-honored doctrines.   They are supported by the following and many other authorities : Wharton on Homicide, § 652 ; *Adams* v. *State*, 42 Ind. 373 ; *Binns* v. *State*, 46 Ind. 311 ; *Ogletree* v. *State*, 28 Ala. 693 ; *State* v. *Bartlett*, 43 N. H. 224 ; *Chase* v. *People*, 40 Ill. 352 ; *Hopps* v. *People*, 31 Ill. 385 ; *People* v. *Garbutt*, 17 Mich. 9 ; *People* v. *McCann*, 16 N. Y. 58.

The jury should have been instructed for the State, that, even if they believed the witnesses supporting the *alibi*, they could not on that account acquit the accused, unless it had been proved that the period during which he was shown to

have been absent from the scene of murder covered the time of its commission, or so nearly did it as to raise in their minds a reasonable doubt as to his having passed from one point to the other, and that in determining this question they must look to all the testimony in the case, giving to the witnesses on either side such credit as they thought them entitled to.

There were an unusually large number of instructions given, correctly announcing the legal rule on the subject of reasonable doubts; but we cannot think that they cured the vice of those relating to the *alibi*. They were general in their character, and may have been, and probably were, understood by the jury as having reference alone to doubts entertained in relation to the circumstantial evidence upon which the State relied for a conviction. It was as important to the accused that the jury should be correctly informed on one subject as on the other.

Nine instructions asked by the defendant were refused; but while a majority of them were perhaps correct, they were substantially covered by the twenty-four given in his behalf. Where a circuit judge is called upon, amid the excitement of a *nisi prius* trial, to give such a mass of charges, we should be loath to reverse a case because of the improper giving or refusing of some of them, unless it was manifest that prejudice had been thereby sustained.

As the accused must undergo another trial, we forbear to comment on the facts.

　　　　　*Judgment reversed and venire de novo awarded.*

