## NEWTON *v.* STATE

No. 40188          November 12, 1956          90 So. 2d 375

*Roberson, Luckett & Roberson,* Clarksdale, for appellant.

*John H. Price, Jr., Asst. Atty. Gen.,* Jackson, for appellee.

Holmes, J.

The appellant was charged by indictment in the Circuit Court of Coahoma County with the crime of armed robbery. His trial resulted in his conviction and he was sentenced to serve a term of eight years in the State penitentiary. He appeals from the judgment of conviction.

The State's case rests wholly upon the testimony of G. C. Conklin, the victim of the alleged robbery, to establish the identity of the appellant as the person who committed the crime charged. The substance of this witness' testimony is as follows:

Conklin lived in a trailer at Hillhouse in Coahoma County. The trailer was parked about six feet from Jackson's Store. On the evening of December 14, 1955, Conklin left Jackson's Store at about 6:20 o'clock and went to his trailer. After entering his trailer, he removed his shoes and put on his slippers and turned on his radio and laid down on his bunk. A short time there-

after, he heard Mr. and Mrs. Jackson leaving their store and very soon thereafter he heard a knock on his door and he heard someone say "open up, open up". Thinking it was Mr. Jackson, he went to the door and started to open it when the door, which swings outward, was jerked out of his hand. A man immediately entered with a gun in his left hand, and began to push him back, saying "back up, backup." The man pushed him to the back of the trailer and made him turn around and place his hands upon the back of the trailer. The man then tied a handkerchief over his eyes and tied his hands behind his back, and then went through his pockets, removing his wallet and taking therefrom $227.00 in cash. The man then forced him to lie down on his bunk with his face to the wall. Conklin testified that while he saw only the one man, there was someone else present who spoke in a disguised voice. Conklin described the gun as a 38-caliber, nickle plated pistol. He testified that the robber was wearing a zipper style jacket which was darker than his trousers, and was wearing a hunter's cap which turned up on the sides and down in the front. He wore a light colored shirt which had a design in it. The robber entered the trailer at about 6:45 P. M. and he and his unknown associate left the trailer about 12 or 14 or 15 minutes later. Conklin heard a car crank up and drive away just after they left the trailer. Conklin reported the matter to the officers and gave them his description of the robber. The officers later showed Conklin two photographs and Conklin identified one of them as a picture of the man who robbed him. The picture so identified was a photograph of the appellant. Conklin had never before seen the robber, and had opportunity to observe him only for from one and a half to two and a half minutes, as the robber pushed him to the back of the trailer and blindfolded him. The trailer was dimly lighted by a wick-type kerosene lantern. Conklin was permitted later to observe the appellant in the county jail.

At first he was in doubt as to whether the appellant was the man who robbed him because the robber's hair appeared a little lighter than the appellant's hair. Later, he positively identified the appellant as the man who robbed him and said that he could not be mistaken about the appellant's identification.

The appellant's defense was an alibi. To sustain this defense, he introduced as witnesses his wife, Mrs. Norma Newton, and his brother-in-law, Belmont McClenic, and six others who were wholly unrelated to him and apparently wholly disinterested. One of these witnesses was an employee of Baxter Laboratories, located near Cleveland, Mississippi. Another was a dragline operator. Another was a tractor dealer in Clarksdale. Another was the son of a Judge of the General Sessions Court in Memphis who traveled in Mississippi for the Ford Tractor-Dearborn Motor Credit Corporation. The testimony of all of these witnesses showed that at the time of the alleged robbery the appellant was in Cleveland or in the immediate vicinity of Cleveland. The undisputed evidence shows that traveling from Conklin's trailer in Hillhouse to the center of Cleveland, proceeding by the longer route in an automobile at 70 miles per hour, would require 44½ minutes, and by the shorter route, would require 36 minutes. It is inescapable that if the testimony of these unrelated and wholly disinterested witnesses is true, the appellant could not have been at the scene of the crime at the time it is alleged to have been committed.

The appellant assigns as error the action of the trial court in refusing the following instruction:

"The Court instructs the jury for the defendant, Jack Newton, that it is only necessary that the evidence of the alibi should raise a reasonable doubt in the minds of the jury, and it is not required that the alibi be conclusively established, but on the contrary, the State must prove that the alibi is untrue."

It will be obsreved that this instruction placed upon the State the burden of proving that the alibi was

untrue. We think this was a greater burden than was required of the State. ■■ ■ All that was required of the State was that it's evidence be such as to warrant the jury in believing beyond a reasonable doubt that the appellant was at the scene of the crime and committed the robbery. The State's proof, in chief, was contradictory of the appellant's proof of an alibi, and it was the province of the jury to determine from the evidence as a whole the guilt or innocence of the appellant. Since the State's proof in chief was contradictory of appellant's proof of an alibi, the State was not required to rebut by other evidence the appellant's proof of an alibi and thereby negative appellant's proof. In the case of Pollard v. State, 53 Miss. 410, the Court used the following appropriate language:

''When the State arraigns a citizen upon an indictment, it assumes the burden of proving his guilt to the satisfaction of the jury, to the exclusion of every reasonable doubt. When it has exhausted its testimony, or so much thereof as it deems necessary, it rests its case, and the prisoner enters upon his defense. The burden resting upon him—if we admit that the burden of proof ever devolves upon him—fails far short of that imposed upon the State. He has only to raise in the minds of the jury a reasonable doubt of his guilt, springing out of all the evidence in the case; and whether he contents himself with rebutting the case made by the State, with all the legal inferences and presumptions deducible therefrom, or adopts what is called an affirmative defense, by undertaking to show exculpatory facts wholly disconnected from the proof made by the State, he is alike entitled to his acquittal when he has succeeded in raising this doubt.''

■■ ■ In view of what we have said, we are of the opinion that the trial court was correct in refusing the aforesaid requested instruction.

The appellant further complains that the court erred in refusing to give as requested the following instruction:

"The Court charges the jury for the defendant, Jack Newton, that an alibi is a legal and proper defense in law, and that the defendant is not required to establish the truth of his alibi to your satisfaction, but that the evidence in support of the alibi need only exclude the possibility of the defendant's presence at the time and place of the cirme, and if upon consideration of the whole evidence you think there is a probability that the defendant was not at the scene of the crime, then it is your sworn duty to find the defendant not guilty."

The court modified said instruction by striking out the words "there is a probability", and offered to give the instruction as modified. The appellant declined to accept the instruction in its modified form and excepted thereto and declined to read the instruction to the jury. We think the court was in error in striking out the quoted portion of the instruction. The appellant was entitled to have the jury instructed that if under the evidence there was a probability of his innocence he should be acquitted. Nelms v. State, 58 Miss. 362; McNair v. State, 215 Miss. 510, 61 So. 2d 338. The State contends that in view of other instructions given to the appellant defining reasonable doubt and instructing the jury as to the burden of the State to establish the guilt of the appellant beyond a reasonable doubt, the court committed no reversible error in modifying the instruction. Ordinarily, where the jury in other instructions has been adequately instructed as to the burden of the State to establish guilt beyond a reasonable doubt, we would not regard as reversible error the action of the court in so modifying the instruction. In this case, however, the State's case as to the identity of the appellant rests entirely upon one witness. He had opportunity under very disturbing and exciting circumstances to observe the rob-

ber on the night of the robbery for only from one and a half to two and a half minutes in a trailer which was dimly lighted by a wick-type kerosene lantern. The robber had on a cap pulled down in front. Conklin had never before seen the robber. He was at first in doubt as to the identity of the robber because the robber's hair appeared to be ligther than the appellant's. It is true that thereafter he positively identified the appellant and said that he could not be mistaken about it. On the other hand, leaving out the testimony of appellant's wife and his brother-in-law because of their interest and relationship to the appellant, there are some five or more witnesses who are unrelated to the appellant and apparently disinterested who placed the appellant in Cleveland, or in the vicinity thereof, at the time the robbery occurred. In view of the distance between Hillhouse and Cleveland, it is manifest that the appellant could not have been in Cleveland between six and seven o'clock P. M. and at the same time have committed the robbery in Hillhouse. ██ █ We are, of course, reluctant to disturb the jury's finding upon an issue of fact where the evidence is conflicting, and we are not departing from that position. However, in view of the weakness in the testimony of the State's only witness and the strength of the testimony in support of the appellant's claimed alibi, we are of the opinion that it was reversible error for the court to decline to give the instruction except as modified.

We think that the appellant, in the light of the testimony, was entitled to have the jury instructed that if there was a probability of his innocence the jury should acquit him. The record discloses that the jury deliberated a little more than five hours before returning a verdict of guilty. It is conceivable to us that such an instruction might have entirely changed the verdict of the jury in this case. We are accordingly of the opinion that in view of the nature of the testimony for the State on the one

hand and for the appellant on the other, the case should be reversed and another jury be given an opportunity to pass upon it.

The instruction last above discussed uses the language, "that the evidence in support of the alibi need only exclude the possibility of the defendant's presence at the time and place of the crime." We think this language is inaccurate, and we deem it appropriate to point out that if this same instruction is requested on another trial, the language just quoted should be changed so as to direct the jury that the evidence in support of the alibi need only raise in the minds of the jury a reasonable doubt as to the defendant's presence at the time and place of the crime.

Reversed and remanded.

*McGehee, C. J.,* and *Lee, Arrington* and *Ethridge,* JJ., concur.