BROOM, Justice,
for the Court:
Mistaken identity of a con artist who used the “pigeon dropping” scheme to bilk an aged woman out of her $500 is urged as ground of reversal here. Pursuant to Mississippi Code Annotated § 97-17-41 (1972), the “pigeon dropper,”[1] Ineta Baker (defendant herein),[2] in the Circuit Court of Pike County was convicted of grand larceny, sentenced to two years with the Mississippi Department of Corrections, and ordered to make restitution. Sufficiency of the evidence is the sole issue before us.[3] We affirm.
The naive victim of the “pigeon dropping,” Mrs. Lillie McGehee, a 70-year old black woman, went to Magnolia during the morning of October 1,1979, on business. In Magnolia, McGehee was engaged in conversation by an unidentified man during which the defendant appeared, and they all talked about money. Later “church work” was subject of their conversation. The unidentified man stated that he had found a large amount of money that was “too much to tote out” which he would divide with McGe-hee and the defendant. They went to Alford’s store where the unidentified man went inside after stating that he had to meet the man with the money. Shortly the unidentified man came back to the car and stated to the defendant that inside the store was a man with her share of the money. At that time the defendant exited the car and went in the store from which she promptly returned. She stated to McGehee that she got her share of the money and “if [Mrs. McGehee] would go down and draw *1022 what [she] had in the bank that the man would be there at the Dollar Store” to give her a share of the money. Following this statement by the defendant they moved the car to another parking place where the man got out and went somewhere for a brief time. Upon his return he stated to McGe-hee that the man was “standing down there by the Dollar Store with your share of the money.” This unidentified man also told her that she would not have to go into the store: “he’s standing on the outside and you hand him this $500.00 and he’s going to give you $1,500.00.”
McGehee, according to the instructions given her, had withdrawn $400 from the bank and already had $100 with her, making a total of $500. While the defendant was talking to McGehee about church work, the unidentified man placed McGehee’s money inside a handkerchief. Then he handed her what she thought was her money tied up in the handkerchief. As she was instructed, McGehee went to the Dollar Store but found no man waiting for her. Failing to find such a man, she went back to where the car had been parked, but it had been moved. She then walked a distance and untied the handkerchief in which she found only paper — no money. She then reported the incident to a Mr. Alford who called the law officers, and an investigation ensured. She had no watch or clock from which she could positively fix the times of day, but gave estimations.
Argued here is the assertion that this “is merely a case of mistaken identity, the identity of” the defendant “is confused with the identity of the actual perpetrator of a crime.”
In order to determine whether the evidence is so weak as to warrant another jury trial, we have carefully examined the testimony. McGehee vividly described how she was victimized of her money. She testified that the defendant was the woman participating in the scheme and was with the man who actually took her money. Clearly, the jury had sufficient evidence before it to support the verdict of guilty.
The following is an excerpt of McGehee’s testimony:
Q. Now, after having seen her up close, is there any doubt in your mind that this was the lady that you saw that morning?
A. No. It isn’t no doubt.
Although three alibi witnesses testified in behalf of the defendant, none of them actually saw or was present with the defendant until the noon hour of the day when the offense was committed. The offense was perpetrated approximately two hours before noon time. During the morning of the day of the crime, the alibi witnesses stated that they were in contact with the defendant, but the contacts were by means of a telephone. Two of the calls, which could have been made outside of Jackson, were initiated by someone purporting to be the defendant. Chief Donald Butler of the Mississippi Highway Patrol (investigator at the time) testified that shortly before 10 o’clock during the morning of the offense he was requested to assist in the investigation. The totality of the testimony indicates that the defendant and the male who accompanied her finished their “pigeon dropping” on McGehee prior to or not long after 10 o’clock.
The defendant contends that she was in Jackson the entire day of the offense, attending to details of purchasing a home, but she presented no testimony of anyone who saw her before noon. Acting within her rights, she did not testify, and (except for the telephone calls) the record is strangely silent as to what she did or who saw her during the morning in question. Real estate agent Ranee, according to his testimony, talked with her. The significant aspect about his testimony, however, is that he talked with her by telephone. Defendant’s second alibi witness testified that he remembered talking to the defendant between 10 and 11 o’clock of the morning in question. His contact also was by telephone. Similarly, the third alibi witness stated that he talked with the defendant by phone during that morning and met with her at approximately 12:30 p. m. in Jackson.
*1023 Argument is that the conviction resulted from bias and prejudice of the jurors against the defendant who was charged with having victimized “a 70-year old polite Black lady who undoubtedly has had a large portion of her life savings taken from her by some con artist.” Under Carr v. State, 208 So.2d 886 (Miss.1968), and Newton v. State, 229 Miss. 267, 90 So.2d 375 (1956), we are urged that the case should be reversed and submitted to another jury. Had the alibi witnesses testified that they had personally seen and been with the defendant during the morning of the offense, there would be more persuasion to the defendant’s argument. Such was not the case, and the only contact made by the alibi witnesses with the defendant during the critical morning was by telephone conversations. Upon the testimony, we are unpersuaded that reversal should be ordered, and accordingly the case must be affirmed.
AFFIRMED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and HAWKINS, JJ., concur.

. Pigeon dropper is defined in Webster’s Third New International Dictionary (1971) as one who practices pigeon dropping, a confidence game. The Oxford English Dictionary (1961 ed.) defines pigeon, as used here, as, “one who lets himself be swindled, esp. in gaming.... ”

. Spelling of the defendant’s first náme on the face of the indictment is Anita. On appeal she signed her appearance bond as Ineta, but no point is made thereof.

. Requested but refused was an instruction advising the jury not to consider or draw any inference from defendant’s failure to testify. No assignment of error was made in this regard, but on petition for rehearing the issue was untimely raised and rejected under Rule 6, Mississippi Supreme Court Rules. Prueitt v. State, 261 So.2d 119, 125 (Miss.1972). After trial of this case, the U.S. Supreme Court held that such an instruction should be given. Carter v. Kentucky, - U.S. -, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981). Henceforth, trial judges will on request grant an appropriate instruction on the defendant’s refusal to testify.