# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-KA-00066-SCT

*RANDY CHARLES WILSON a/k/a RANDY WILSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/25/2014 |
| TRIAL JUDGE: | HON. ISADORE W. PATRICK, JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RICHARD T. STARRETT |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | RICHARD EARL SMITH, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/23/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

COLEMAN, JUSTICE, FOR THE COURT:

¶1. A Warren County jury convicted Randy Wilson of receiving stolen property in violation of Mississippi Code Section 97-17-70. The trial court sentenced Wilson to ten years in the custody of the Mississippi Department of Corrections. Finding no error, we affirm Wilson's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.     On April 2, 2012, between 1:00 p.m. and 2:00 p.m., Paul Powers stepped outside his house on Canada Cross Road in Edwards, Hinds County, Mississippi.  As he walked to his truck, which was parked in the front yard, Powers observed a two-tone blue and white "Duly"[1] pickup truck parked in the driveway of the property belonging to his neighbors, Pauline and Randy Vessel.  Powers saw two African-American males, one wearing a lightly colored, possibly white, t-shirt, and the other wearing a "greenish" colored t-shirt.  Powers testified that his observation was from a distance of about 134 yards and that he was not able to observe the facial features of either of the two men.

¶3.     Powers testified that he previously had borrowed a sixteen-foot, tandem-axle utility trailer from the Vessels.  The trailer, according to Powers, was "parked in the front yard of Mr. Vessel's house right in the front of his shed."  Powers stated that the man wearing the white t-shirt picked up a "tubular object," such as a pipe, and proceeded to strike the front, or the "tongue," of the trailer.  According to Powers, the "tongue," also known as the "jack" or the "hitch," is the feature of the trailer which one hooks to the back of a truck.  Powers testified that the Vessels kept a lock on the trailer and that he called Pauline Vessel to inquire whether anyone had permission to borrow the trailer.

¶4.     When he learned from Pauline that no such permission had been given, Powers followed in his own truck: "As it [the suspect truck] was going out of Pauline's driveway I was pulling out [of] my driveway and got behind the vehicle on Canada Cross Road.  We

---

[1] Although the slang term, derived from the word *dual*, appears in the record as *Duly*, it usually is spelled *dooley*. The word describes trucks with dual rear tires; there are two tires, side by side, on each end of the rear axle. Some heavy-duty pickup trucks are so equipped.

came up to Highway 27 to the stop sign and took a right going towards Vicksburg on Highway 27. At that time I had called 911 which contacted Hinds County." Powers observed the suspect truck leave Hinds County and enter Warren County. Powers testified that he followed the truck "the whole time" and that two people were inside the truck. According to Powers, "[w]e were coming up [Highway] 27 and we got to China Grove Road. We took a left off Highway 27." Powers continued, "[a]t that time, once we pulled onto China Grove Road[,] the vehicle pulled over to the right hand side of the road as [if] to let me pass. And I tried to pull in behind them and at that point the[y] started going down the road again." Powers stated that he remained in contact with a 911 operator, whom he updated regarding the whereabouts of the suspect truck.

¶5. According to Powers, the truck pulled onto the edge of the road a second time next to a gravel driveway. Powers drove around the truck, proceeded down China Grove Road, met an unmarked Ford F-150 law enforcement truck, and turned his own vehicle around. Powers testified that he had not been able to observe the suspect truck the entire time. But when Powers returned to the gravel road, he saw the suspect truck parked on the gravel road, but with no trailer attached. The Ford F-150 law enforcement truck had "pulled in there in front of them" and Powers recognized "the same two people with the same clothes" as he had observed at the Vessels' house.

¶6. Investigator Randy Lewis, the officer who responded to Powers's 911 call, testified that the tag number information received from Powers indicated that the vehicle was registered to Timothy Wilson. According to Lewis, "Mr. Wilson and his vehicle came out"

3

in a blue and white Ford which matched the tag information provided by Powers. Lewis testified that Timothy Wilson was driving and was wearing a green work shirt. The passenger in the truck was Randy Charles Wilson, who was wearing a white shirt. Lewis then located the sixteen-foot, double-axle trailer, which was registered to Randy Vessel of Canada Cross Road, just off the dead-end gravel road, China Grove Lane, which turned off from China Grove Road. Lewis arrested Randy Wilson and Timothy Wilson.

¶7. A Warren County Grand Jury indicted Randy Wilson and Timothy Wilson, charging that they:

> [W]hile aiding and abetting and/or acting in concert with each other and/or others on or about **April 2, 2012**, in the County aforesaid, and within the jurisdiction of this Court did willfully, unlawfully, and feloniously receive, possess or buy personal property, to wit: **16 foot tandem axle trailer** which was feloniously taken away from **Randy and Pauline Vessell** [sic], knowing or having reasonable grounds to believe the same to have been so taken wherein such property has a value in excess of $500.00 in violation of Miss. Code of 1972, Ann. Sec. 97-17-70, contrary to the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

The case was tried on September 3 and 4, 2014, in the Circuit Court of Warren County. In addition to the testimony of Powers and Lewis, Pauline Vessel testified that she and her husband had purchased the trailer in April of 2009 and that they had paid $1,400 for it. Vessel added that she had seen the trailer on China Grove Road "behind a house." Vessel stated that she knew it was her trailer because her "husband had welded some metal pieces on the back to put a board because we hauled four-wheelers . . . ." Eddie Calvin, the owner of the property on which the Vessels' trailer was found, testified that he did not see Timothy

4

Wilson and Randy Wilson on April 2, 2012, but that a man he believed to be a police officer removed the trailer from his property.

¶8. The trial court denied *ore tenus* motions for directed verdict by both defendants. After the motions for directed verdict were denied, each defendant presented his case-in-chief. Timothy Wilson presented two alibi witnesses. Willie Dotson testified that, on April 2, 2012, Timothy was working with him in Vicksburg from 8:00 a.m. until 12:00 p.m., when Timothy left for lunch and "never did come back." Henry Ray Hunter testified that he, too, worked with Timothy on April 2, 2012, and that they were working to repair a house in Vicksburg from about 7:00 a.m. or 8:00 a.m. until lunchtime, after which Timothy did not return to work. He stated that Timothy was going back and forth between jobs that day.

¶9. Randy Wilson testified in his own defense. He stated that his brother Timothy had driven him to China Grove Road about 6:00 a.m. or 6:30 a.m. on April 2, 2012, to see a lady friend at a house where she lived. According to Randy, he remained with his friend until "about a quarter to one or something like that," until his brother returned to collect him. It was after Timothy had picked him up that Lewis "pulled us over and asked us about a trailer." Randy denied having been to Hinds County that day. The female friend with whom Randy claimed to have been on April 2, 2012, now lives in Joliette, Illinois. Randy indicated that his friend, who was married, did not wish to participate in his defense, as he and she had been romantically involved and she did not want her husband to find out.

¶10. The State called Jeff Riggs, Under Sheriff for the Warren County Sheriff's Office, who participated in the investigation on China Grove Lane on April 2, 2012. Riggs testified

that Randy had indicated to him that he had been picked up by his brother, Timothy, from his girlfriend's house. He stated that China Grove Lane "is a dead-end road" on which there were about seven houses. Because Randy did not point to a specific house, Under Sheriff Riggs checked two random houses on China Grove Lane "to see if possibly that was where the girlfriend was." According to Riggs, nobody was home.

¶11. The jury found both Randy Wilson and Timothy Wilson guilty as charged. Randy Wilson filed a motion for judgment notwithstanding the verdict, which the trial court denied. He was sentenced to ten years in the custody of the Mississippi Department of Corrections: "three (3) years to serve, with remaining balance suspended with post release supervision for five (5) years . . . ." This appeal concerns only Randy Wilson's conviction and sentence.

## ANALYSIS

¶12. Wilson raises five issues on appeal.

> **1. Whether the trial court committed plain error by allowing Jury Instruction S-4, which informed the jury that proof the defendant stole the property in question is *prima facie* evidence that the defendant knew that the property was stolen property. Alternatively, whether defense counsel was ineffective for failing to object to Instruction S-4.**

¶13. Instruction S-4 informed the jury "that proof that a defendant stole the property that is the subject of the charge against him, or her, shall be prima facie evidence that the defendant had knowledge that the property was stolen." The language of the jury instruction tracked the language of Mississippi Code Section 97-17-70(3)(b): "Proof that a defendant

6

stole the property that is the subject of a charge under this section[2] shall be prima facie evidence that the defendant had knowledge that the property was stolen." Miss. Code Ann. § 97-17-70(3)(b) (Rev. 2014).

¶14. Defense counsel lodged no objection to Instruction S-4. We have held repeatedly that "an offended party's failure to object to jury instructions at trial procedurally bars the issue on appeal." *Neal v. State*, 15 So. 3d 388, 397 (Miss. 2009) (quoting *Smith v. State*, 835 So. 2d 927, 939 (Miss. 2002)). Nevertheless, an "obvious error which was not properly raised by the defendant and which affects a defendant's fundamental, substantive right" may be considered by the Court under the doctrine of plain error. *Johnson v. State*, 155 So. 3d 733, 738 (Miss. 2014) (quoting *Burdette v. State*, 110 So. 3d 296, 303 (Miss. 2013)). "For the plain-error doctrine to apply, there must have been an error that resulted in manifest miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* With regard to an allegation of error in instructing the jury, the Court has held that, "'[i]f the [jury] instructions fairly announce the law of the case and create no injustice, no reversible error will be found.'" *Victory v. State*, 83 So. 3d 370, 373 (Miss. 2012) (quoting *Newell v. State*, 49 So. 3d 66, 73 (Miss. 2010)).

---

[2] Mississippi Code Section 97-17-70(1) provides the following:

A person commits the crime of receiving stolen property if he intentionally possesses, receives, retains or disposes of stolen property knowing that it has been stolen or having reasonable grounds to believe it has been stolen, unless the property is possessed, received, retained or disposed of with intent to restore it to the owner.

Miss. Code Ann. § 97-17-70(1) (Rev. 2014).

¶15. Wilson claims that Instruction S-4 deprived him "of his constitutional right to due process," amounting to plain error, and that Section 97-17-70(3)(b) constitutes "an impermissible shifting of the burden of proof on an essential element of a criminal charge." Wilson cites *Reith v. State*, 135 So. 3d 862, 865 (Miss. 2014), in which the Court forbade the use of a jury instruction which informed the jury that "[d]eliberate design may be presumed from the unlawful and deliberate use of a deadly weapon." The *Reith* Court reversed Reith's conviction of deliberate design murder and held that "[d]eliberate design may not be presumed . . . ." *Id.* at 867. The Court continued, "[w]e admonish the circuit courts not to grant an instruction which relies upon a presumption of intent, as it conflicts with the presumption of innocence, relieving the State of its burden to prove guilt beyond a reasonable doubt on an essential element of the offense." *Id.*

¶16. But the *Reith* Court observed that similar instructions "'have been before the Court for many years and a long line of cases have discussed such instructions.'" *Id.* at 865 (quoting *Tran v. State*, 681 So. 2d 514, 517 (Miss. 1996)). The Court "'consistently held such an instruction erroneous . . . .'" *Id.* In the case *sub judice*, at issue is not a judicially created jury instruction, but a legislatively created statute, which provides a means by which the State may prove the element of knowledge. The State may prove the defendant's guilty knowledge by adducing proof that the defendant stole the property that is the subject of the receiving stolen property charge. Miss. Code Ann. § 97-17-70(3)(b). The jury instruction accurately stated the law regarding the crime of receiving stolen property. *See Victory*, 83 So. 3d at 373.

¶17. Under the present circumstances, the given jury instruction, which is based on Mississippi Code Section 97-17-70(3)(b), did not violate Wilson's fundamental right to due process of law. Because the allegedly offensive jury instruction accurately stated the law regarding the crime of receiving stolen property, no manifest miscarriage of justice resulted from giving Instruction S-4.

¶18. Wilson alternatively argues that counsel's failure to object to Instruction S-4 constituted ineffective assistance of counsel. Claims of ineffective assistance of counsel generally are reviewed in post-conviction proceedings; nevertheless, we may "'reach the merits of the ineffectiveness issue where . . . the record affirmatively shows ineffectiveness of constitutional dimensions. . . .'" *Taylor*, 167 So. 3d at 1146 (quoting *Read v. State*, 430 So. 2d 832, 841 (Miss. 1983)); *see also* M.R.A.P. 22(b) ("Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record.")

¶19. We have held that "[w]hether a defendant has received ineffective assistance of counsel is a question of law reviewed *de novo* under two prongs: '[f]irst, the defendant must show that counsel's performance was deficient . . . . Second, the defendant must show that the deficient performance prejudiced the defense.'" *Taylor v. State*, 167 So. 3d 1143, 1146 (Miss. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). "'There is a strong but rebuttable presumption that trial counsel was competent and performed within the wide range of reasonable conduct expected from counsel.'" *Conners v. State*, 92 So. 3d 676, 686 (Miss. 2012) (quoting *Knight v. State*, 72

9

So. 3d 1056, 1060 (Miss. 2011)).  The burden is on the petitioner to rebut the presumption by showing that counsel's performance did not meet the **_Strickland_** standard. **_Id._**  "The failure of counsel to make certain objections may fall within the ambit of trial strategy, and therefore may not give rise to a claim for ineffective assistance of counsel." **_Nix v. State_**, 8 So. 3d 141,  144 (Miss. 2009) (citing **_Bell v. State_**, 879 So. 2d 423, 440 (Miss. 2004)).

¶20.    Wilson relies on two decisions from the Mississippi Court of Appeals to support his argument that counsel's failure to object to Instruction S-4 constituted deficient performance and that such deficient performance prejudiced his defense.  In **_Blunt v. State_**, the Mississippi Court of Appeals reversed the circuit court's denial of post-conviction relief to Blunt, finding that his counsel had rendered ineffective assistance. **_Blunt v. State_**, 55 So. 3d 207, 211-12 (Miss. Ct. App. 2011).  In **_Blunt_**, the language of the given jury instruction had been condemned by the Mississippi Supreme Court: "an instruction like the one [Blunt's counsel] requested in Blunt's trial 'is contradictory and confusing and does not correctly state the applicable law because one acting in self-defense does not act at his own peril.'" **_Blunt_**, 55 So. 3d at 211 (quoting **_Johnson v. State_**, 908 So. 2d 758, 764 (Miss. 2005)).

¶21.    Counsel's failure to object to Instruction S-4, which stated a controlling rule of law and tracked, almost _verbatim_, the language of Mississippi Code Section 97-17-70(3)(b), did not constitute deficient performance which could be said to have prejudiced Wilson's defense.  Unlike the defendants in **_Blunt_** and **_McTiller_**, Wilson has not presented any evidence to rebut the presumption of his attorneys' competency, nor has he demonstrated that counsel's performance fell below the **_Strickland_** standard.  Because Instruction S-4

accurately stated the law regarding the crime of receiving stolen property, the performance of Wilson's counsel fell "'within the wide range of reasonable conduct expected from counsel.'" *Conners*, 92 So. 3d at 686 (quoting *Knight*, 72 So. 3d at 1060).

¶22. Wilson's claim that his counsel was constitutionally ineffective for failure to object to Instruction S-4 is without merit.

> **2. Whether the trial court committed plain error by allowing Jury Instruction S-3, which informed the jury that the State is not required to disprove the defendant's alibi but rather that the State must prove the defendant's guilt beyond a reasonable doubt. Alternatively, whether defense counsel was ineffective for failing to object to Instruction S-3.**

¶23. Jury Instruction S-3 provided the following:

> The Court instructs the jury that the State is not required to disprove an alibi. In other words, the State is not required to prove that any alibi defense is not true; the State is only required to prove, beyond a reasonable doubt, that the defendants, Randy Charles Wilson and Timothy Allen Wilson, are guilty, beyond a reasonable doubt, of Receiving Stolen Property as charged.

Wilson claims on appeal that Instruction S-3 "unconstitutionally placed the burden of proving the alibi squarely upon the defendants" and that "[s]hifting the burden of proving the alibi to the defendants deprived them of a fair trial."

¶24. Defense counsel objected to the original language of Instruction S-3, which did not specify that the crime was receiving stolen property. However, the State agreed to add the requested language. Counsel did not object to the allegedly unconstitutional language of the instruction. As stated above, the Court has held that "an offended party's failure to object to jury instructions at trial procedurally bars the issue on appeal." *Neal*, 15 So. 3d at 397 (quoting *Smith*, 835 So. 2d at 939).

11

¶25. Nevertheless, the doctrine of plain error allows the Court to correct "obvious error which was not properly raised by the defendant and which affects a defendant's fundamental, substantive right." *Johnson*, 155 So. 3d at 738 (quoting *Burdette*, 110 So. 3d at 303). "For the plain-error doctrine to apply, there must have been an error that resulted in manifest miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* With regard to an allegation of error in instructing the jury, the Court has held that, "'[i]f the [jury] instructions fairly announce the law of the case and create no injustice, no reversible error will be found.'" *Victory*, 83 So. 3d at 373 (Miss. 2012) (quoting *Newell*, 49 So. 3d at 73).

¶26. The Court has rejected jury instructions which misstated the prosecution's burden: "Harvey Holmes's alibi instruction improperly stated that it was the government's burden to convince the jury that his alibi was not true. The state is *not* required to disprove a defendant's alibi; the burden is simply to prove the defendant's guilt beyond a reasonable doubt." *Holmes v. State*, 481 So. 2d 319, 320 n.1 (Miss. 1985) (emphasis in original) (citing *Forrest v. State*, 352 So. 2d 1328, 1330 (Miss. 1977)) ("It is elemental that the State does not have to prove an alibi to be untrue. Its burden simply is to prove [defendant's guilt] beyond a reasonable doubt . . . ."); *see also* *Dubose v. State*, 320 So. 2d 773 (Miss. 1975) (Court rejected jury instruction which placed on the State the burden to disprove alibi defense "because the state, after presenting its case in chief, does not have the burden to prove that the alibi was untrue by rebuttal testimony after the accused rests. The state's burden is to prove from the evidence, beyond a reasonable doubt, that the accused was at the scene of the

12

alleged crime and committed the [crime]."); ***Newton v. State***, 229 Miss. 267, 90 So. 2d 375, 377 (1956) ("Since the State's proof in chief was contradictory of appellant's proof of an alibi, the State was not required to rebut by other evidence the appellant's proof of an alibi and thereby [negate] appellant's proof.").

¶27.  As in ***Newton***, "the State's proof, in chief, was contradictory of the appellant's proof of an alibi, and it was the province of the jury to determine from the evidence the guilt or innocence of the appellant." ***Newton***, 90 So. 2d at 377.  Because Instruction S-3 correctly informed the jury of the State's burden of proof where an alibi defense is concerned, Wilson's claim of reversible error is without merit.

¶28.  Wilson makes the alternate argument that counsel was ineffective for failing to object to Instruction S-3.  As in Issue 1, counsel's failure to object to Instruction S-3, which stated a controlling rule of law and tracked, almost *verbatim*, the language of caselaw from the Court, did not constitute deficient performance which could be said to have prejudiced Wilson's defense.  Wilson has not presented any evidence to rebut the presumption of his lawyers' competency, nor has he demonstrated that counsel's performance fell below the ***Strickland*** standard.  Wilson's claim of ineffective assistance of counsel is without merit.

> **3.      Whether the prosecution committed plain error during closing argument by arguing facts not in evidence, by misstating the Mississippi Rules of Evidence, and by expressing a personal belief in the defendant's guilt. Alternatively, whether defense counsel was ineffective for failing to object to the prosecution's alleged misconduct.**

¶29.  Wilson argues that various statements the prosecutor made in his closing argument prejudiced his defense.

13

¶30. "The standard of review which this Court must apply to lawyer misconduct during opening statements or closing arguments is 'whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.'" *Galloway v. State*, 122 So. 3d 614, 643 (Miss. 2013) (quoting *Sheppard v. State*, 777 So. 2d 659, 661 (Miss. 2000)). "The purpose of a closing argument is to fairly sum up the evidence." *Galloway*, 122 So. 3d at 643 (citing *Rogers v. State*, 796 So. 2d 1022, 1027 (Miss. 2001)). Prosecutors "are not allowed to employ tactics which are 'inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury.'" *Galloway*, 122 So. 3d at 643 (quoting *Sheppard*, 777 So. 2d at 661). "'The prosecutor may comment upon any facts introduced into evidence, and he may draw whatever deductions and inferences that seem proper to him from the facts.'" *Galloway*, 122 So. 3d at 643 (quoting *Bell v. State*, 725 So. 2d 836, 851 (Miss. 1998)). "Counsel 'cannot, however, state facts which are not in evidence, and which the court does not judicially know, in aid of his evidence. Neither can he appeal to the prejudices of men by injecting prejudices not contained in some source of the evidence.'" *Id.*, (quoting *Sheppard*, 777 So. 2d at 661 (quoting *Nelms & Blum Co. v. Fink*, 159 Miss. 372, 131 So. 817, 821 (1930)).

¶31. At trial, the defense made no objections to the prosecutor's statements, which Wilson claims prejudiced his defense on appeal. "In general, the failure to object to the prosecution's statements in closing argument constitutes a procedural bar." *Ross v. State*, 954 So. 2d 968, 1001 (Miss. 2007) (citing *Spicer v. State*, 921 So. 2d 292, 309 (Miss. 2006)).

14

Nevertheless, the failure to object "in extreme cases, . . . will not act as a bar to consideration." *Ross*, 954 So. 2d at 1002 (citing *Wood v. State*, 257 So. 2d 193, 200 (Miss. 1972)).

¶32.   The prosecutor made the following statement in his closing argument:

> What they want you to believe is that there is this conspiracy, Paul Powers and all these cops, and under-sheriff, . . . that there is a conspiracy.
>
> Let me tell you about that 911 call and about all this evidence that we don't have. Eugene Perrier [Timothy Wilson's counsel] has a[ll] that evidence. He's got that report from 911. But let me tell you, there are rules of evidence. You've heard us say the word, hearsay, objection hearsay? Hearsay means that if you have a witness that tells you about it well then you don't need to bring the document in also.

In reference to Paul Powers's testimony that he was relaying information to authorities via 911, the prosecutor stated in closing that "we know that its in Hinds County, not on anybody's testimony but based on that 911. He followed the truck from Hinds County to Warren County." Wilson argued that the State committed reversible error by referencing the 911 calls, which were not in evidence, and by misstating the hearsay rule.

¶33.   It is true that "[a]rguing statements of fact which are not in evidence or necessarily inferable from facts in evidence is error when those statements are prejudicial." *Ross*, 954 So. 2d at 1002 (internal citations omitted). However, on cross-examination by counsel for Timothy Wilson, Paul Powers testified that he was certain that the tag number of the truck he had followed and the tag number of the truck which appeared in the pictures adduced in evidence were the same. Defense counsel had asked whether Powers had written down the tag number and Powers responded, "[n]o, but I called in 911 Dispatch and I know that they

15

will have the tag number on a recording." In closing, defense counsel for Timothy Wilson had stated the following:

> You know we heard from Mr. Paul Powers. He kept referencing his authority to what, a 911 report to the 911 center. And he is a fireman, a volunteer fireman. He professed to have personal knowledge that they have a recording of everything that happened, both in Hinds County and Warren County. Where is that information? If it is there why don't you have it? Why don't you know the exact time the call was made? Why don't [you] know the exact person that was contacted? Why don't you know what was given to the authorities[?] Instead, you are just lead, just trust me, believe me, this is what happened. We got that tag because it was called in. But we don't have anything showing it was called in.

The prosecutor's statements regarding a 911 report were responsive to what Timothy Wilson's defense counsel had said in his closing argument. He simply was pointing out that Powers had testified that he had followed the truck from Hinds County into Warren County. Powers had personal knowledge of what he had related to the 911 operator. It cannot be said that the facts discussed were not in evidence, or that their mention by the prosecutor in his closing argument unfairly prejudiced Wilson's defense. *Ross*, 954 So. 2d at 1002.

¶34. Wilson also takes umbrage with another statement by the prosecutor in his closing argument: "Another jury instruction tells you and these things are very clear that any proof that the person stole the property that they are in possession of is evidence that they knew the property was stolen." Wilson argues that referencing Instruction S-4 in the closing argument "was fatally prejudicial to the defense." However, as has been discussed above, his argument is unavailing in light of the determination that no error occurred in the trial court's giving of Instruction S-4. The argument cannot be said to have been "'inflammatory, highly

16

prejudicial, or reasonably calculated to unduly influence the jury.'" *Galloway*, 122 So. 3d at 643 (quoting *Sheppard*, 777 So. 2d at 661).

¶35.  Finally, Wilson argued that the prosecution improperly expressed personal belief in the defendant's guilt:

> You are going to look at all the evidence . . . . [a]nd once you do that we believe that you will be convinced as we are that on April 2nd, 2012[,] Timothy Wilson and Randy Wilson committed the crime of receiving stolen property of being in possession of the stolen 16-foot trailer that was owned by the Vessel's [sic].

Wilson argues that the "as we are" language was an impermissible comment by the prosecutor regarding his personal beliefs.

¶36.  It is true, as Wilson argues, that "'[a] prosecutor is forbidden from interjecting his personal beliefs regarding the veracity of witnesses during closing argument.'" *Moffett v. State*, 156 So. 3d 835, 859 (Miss. 2014) (quoting *Foster v. State*, 639 So. 2d 1263, 1288 (Miss. 1994) (citing *U.S. v. Young*, 470 U.S. 1, 5, 20, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985))).  However, the prosecutor in the instant case was not expressing a personal belief regarding the veracity of witnesses.  Prosecutors' statements of personal beliefs regarding the guilt of the defendant also are disallowed: "this State does not allow a prosecutor to comment on his personal beliefs about a defendant's guilt or innocence." *Mack v. State*, 650 So. 2d 1289, 1320-21 (Miss. 1994) (citing *Jones v. Butler*, 864 F.2d 348, 359-60 (5th Cir. 1988)).

¶37.  In *Mack*, the prosecutor was found to have "overstepped his bounds in arguing to the jury." *Mack*, 650 So. 2d at 1321.  In that case, "the prosecutor's *repeated* reference to what

17

'I know' as opposed to what the state or 'we' know may have suggested to the jury that the prosecutor had some information or knowledge that was not presented to the jury." *Id.* (emphasis added). The Court held that "[t]he prosecutor's comments would have been permissible [] had he not repeatedly used the pronoun 'I,'" which "leaves open the inference that the prosecutor personally believed that Mack committed the capital murder." *Id.* Nevertheless, the *Mack* Court held the error to have been harmless. *Id.* In any event, Randy Wilson's defense counsel made no objection. Further, the prosecutor did not repeat or emphasize the comment, but rather said it in passing. In light of the exceptional strength of the State's case, and in light of the context in which the statement was made, even if there had been error it would not arise to the level of plain error necessary to overcome the failure to object.

¶38. As in Wilson's other assignments of error, he argues that his counsel was ineffective for failing to object to the above statements. However, it cannot be said that counsel's failure to object to the State's closing statement constituted deficient performance, nor that the alleged deficient performance prejudiced Wilson's defense. *Taylor*, 167 So. 3d at 1146 (quoting *Strickland v. Washington*, 466 U.S. at 687).

    **4.**      **Whether cumulative error requires reversal.**

¶39. Wilson next claims that, "[e]ven if the individual errors discussed above do not merit reversal in their own right, the cumulative effect of these errors deprived Randy Wilson of a fair trial." The cumulative error doctrine provides that "where one error, standing alone, may not warrant reversal, reversal may be required if the errors, taken together, 'create such

18

an atmosphere of bias, passion, and prejudice that they effectively deny the defendant a fundamentally fair trial.'" ***Dickerson v. State***, 175 So. 3d 8, 35 (Miss. 2015).  However, in the absence of individual errors, no cumulative error exists.  *See **Dickerson***, 175 So. 3d at 35.

### 5.    Whether Randy Wilson's sentence is illegal.

¶40.    Mississippi Code Section 97-17-70(3) formerly provided that any person "who shall be convicted of receiving stolen property which exceeds Five Hundred Dollars ($500.00) in value shall be committed to the custody of the State Department of Corrections for a term not exceeding ten (10) years or by a fine not more than Ten Thousand Dollars ($10,000.00) or both."  Miss. Code Ann. § 97-17-70(3) (Rev. 2006).  Effective July 1, 2014, Section 97-17-70 changed to provide that the value of the stolen property be "One Thousand Dollars ($1,000.00) or more, but less than Five Thousand Dollars ($5,000.00) . . . ."  Miss. Code Ann. § 97-17-70(4) (Rev. 2014).  The penalty for that offense was changed to "imprisonment in the custody of the State Department of Corrections for a term not exceeding five (5) years or by a fine of not more than Ten Thousand Dollars ($10,000.00) or both."  *Id.*

¶41.    In the instant case, the circuit court sentenced Wilson to ten years pursuant to the older version of the statute.  Relying on Mississippi Code Section 99-19-33 and ***Daniels v. State***, 742 So. 2d 1140 (Miss. 1999), Wilson argues that the trial court erred in not sentencing him under the newer, more lenient version of Section 97-17-70.  We disagree, and we overrule ***Daniels*** and ***West v. State***, 725 So. 2d 872 (Miss. 1998), *abrogated by **Jackson v. State***, 860

19

So. 2d 653 (Miss. 2003), to the extent that they conflict with Mississippi Code Section 99-19-1, as more fully set forth below.

¶42. Mississippi Code Section 99-19-1 provides as follows:

> No statutory change of any law affecting a crime or its punishment or the collection of a penalty shall affect or defeat the prosecution of any crime committed prior to its enactment, or the collection of any penalty, whether such prosecution be instituted before or after such enactment; and all laws defining a crime or prescribing its punishment, or for the imposition of penalties, shall be continued in operation for the purpose of providing punishment for crimes committed under them, and for collection of such penalties, notwithstanding amendatory or repealing statutes, unless otherwise specially provided in such statutes.

The above-quoted statutory language provides that no new statutory enactment *shall* defeat the prosecution of a crime committed before the enactment of the new statute. Moreover, and more pertinent to the issue today, Section 99-19-1 continues by mandating – again by using the word "shall" – that all laws prescribing punishment for a crime remain in effect for the purpose of ascribing punishment "unless otherwise specially provided" in a newly enacted statute. Miss. Code Ann. § 99-19-1 (Rev. 2015).

¶43. Despite Section 99-19-1's pronouncement that, in cases like today's, the sentencing court must follow the version of a statute in existence at the time a crime was committed, in *Daniels v. State*, 742 So. 2d 1140 (Miss. 1999), we held that "when a statute is amended to provide for a lesser penalty, and the amendment takes effect before sentencing, the trial court *must* sentence according to the statute as amended. Any precedent holding otherwise is in error." *Id.* at 1145 (¶ 17). In short, our holding in *Daniels* directly contradicts the legislative pronouncement of Section 99-19-1. The Court may be able to overrule its own cases, but

20

absent a showing beyond a reasonable doubt that a statute is unconstitutional, the Court may not overrule statutes. Accordingly, Section 99-19-1 should dictate today's result. Even if the Court somehow had the power to ignore statutes it dislikes, the Court's holding in *Daniels*, results from a misreading of *West v. State*, 725 So. 2d 872 (1998), which itself misread *State ex rel. Pittman v. Ladner*, 512 So. 2d 1271, 1277 (Miss. 1987), which in turn misread *Allen v. State*, 440 So. 2d 544 (Miss. 1983), such that the whole developmental chain resembles a jurisprudential game of Telephone. In truth, *Ladner* did not overrule *Allen*, and even if it did, the holdings of *West* and *Daniels* impermissibly result in a judicial rewriting of two statutes – Sections 99-19-1 and 99-19-33.

¶44. The Court has no business amending or disregarding statutes. *Little v. Miss. Dep't of Transp.*, 129 So. 3d 132, 138 (¶ 12) (Miss. 2013) ("We—the judicial branch of government—should not place ourselves in the position of changing the substantive law enacted by the Legislature. . . .") (citing *Stockstill v. State*, 854 So. 2d 1017, 1022-23 (¶ 13) (Miss. 2003)). Courts have a "constitutional mandate to faithfully apply the provisions of constitutionally enacted legislation." *Tallahatchie Gen. Hosp. v. Howe*, 49 So. 3d 86, 92 (¶ 17) (Miss. 2010). Likewise, it is not within the bailiwick of the Court to write statutes; rather, the Court construes them as written. *Zambroni v. State*, 217 Miss. 418, 424, 64 So. 2d 335, 337 (1953). In *Harris v. State*, 179 Miss. 38, 175 So. 342 (1937), the Court wrote, "[W]e are admonished and have clearly in mind that penal statutes must be strictly construed, and that the court can neither add to nor take from them, and we cannot by judicial

21

construction, or considerations of expediency, supply what is palpably omitted from a statute." *Id.* at 344.

¶45. Even if the Court could obviate a statute merely by overruling a case in which we interpreted it, the conclusion of the *Daniels* Court, that *Allen v. State*, 440 So. 2d 544 (Miss. 1983), has been overruled, is not correct. *See Daniels*, 742 So. 2d at 1145 (¶ 17). In *Allen*, the Circuit Court of Forrest County convicted the defendant, Jesse Allen Jr., of armed robbery. *Id.* at 545. The robbery took place on May 23, 1973. *Id.* At the time of the crime, Mississippi Code Section 97-3-79 (1972) set the maximum penalty as death but provided that if the jury failed to "fix the penalty at death, the court shall fix the penalty at imprisonment in the penitentiary for any term not less than three years." *Allen*, 440 So. 2d at 545. The circuit court affixed a sixty-year sentence. *Id.*

¶46. The Legislature, however, amended the sentencing statute to remove the death penalty option before the circuit court sentenced Allen. *Id.* Further, in *Stewart v. State*, 372 So. 2d 257 (Miss. 1979), the Mississippi Supreme Court added the prohibition against sentencing one convicted of armed robbery for a period of time exceeding the life expectancy of the defendant. *Allen*, 440 So. 2d at 545. The *Allen* Court reached the conclusion that, "under the amended statute Allen's sentence is too long." *Id.* Accordingly, at issue in *Allen* was whether the circuit court properly had sentenced Allen under the older version of the sentencing statute, which was in effect on the date of the crime but not on the date of sentencing. In answering the question, the *Allen* Court wrote as follows:

> The power to prescribe penalties to be exacted from those committing acts
> made unlawful under the criminal laws of this state is vested entirely in our

22

> Legislature. Purely and simply, our Legislature fixes the punishments for crimes. **Gabriel v. Brame**, 200 Miss. 767, 773, 28 So. 2d 581, 583 (1947); **Howell v. State**, 300 So. 2d 774, 780 (Miss. 1974); **Upshaw v. State**, 350 So. 2d 1358, 1360 (Miss. 1977). There can be no doubt but that it was in the lawful power of the Circuit Court of Forrest County to impose upon Allen any sentence authorized by Section 97-3-79 as that statute read on May 23, 1973, the date on which Allen robbed the bank.

*Id.*

¶47. In reaching the strongly worded and unanimous holding quoted above, the **Allen** Court considered the now-embattled Mississippi Code Section 99-19-1. The **Allen** Court relied on the statutory language and held that the sentencing court did not err in choosing to sentence Allen pursuant to the earlier version of the statute. "We find it indisputable that the Circuit Court had power to impose upon Jesse James Allen, Jr. any sentence within the scope of the statute as it was written on the date he committed his offense." *Id.* at 546 (citing **Byrd v. State**, 165 Miss 30, 36-37, 143 So. 852, 853 (1932)).

¶48. Four years later, the **Allen** Court's holding, strongly worded though it may have been, was whispered into the ear of the Court in **State ex rel. Pittman v. Ladner**, 512 So. 2d 1271 (Miss. 1987). Far from being a criminal case considering evolving sentencing statutes, **Ladner** presented a dispute over a public contract. Nevertheless and as more fully explained below, one small section of language from **Ladner** has led subsequent courts to the belief – mistaken, in my view – that **Ladner** overruled the **Allen** Court's holding that in a criminal case a sentencing court does not err when, pursuant to Section 99-19-1, it sentences a defendant under an earlier, harsher sentencing provision.

23

¶49.    At the heart of *Ladner* was the grant of emergency school-repair contracts. *Ladner*, 512 So. 2d at 1272. The Hancock County School Board entered into contracts to repair tornado damage to Gulfview Elementary School. *Id.* at 1273. The school board met, declared an emergency situation, contracted with one party to clean up the school property, and empowered the school superintendent to enter into other contracts for security, cleanup, and repair. *Id.* In the following months, the school board authorized payment based on several contracts, including a payment of $27,784.32 to Gulf Electric, Inc. *Id.* Gulf Electric employed one of the members of the school board, Louie Ladner. *Id.* On the advice of the board attorney, Ladner abstained from all board votes regarding Gulf Electric, but he actually worked as a Gulf Electric employee on the project. *Id.*

¶50.    The State of Mississippi filed suit in the Chancery Court of Hancock County against the five school-board members and the school superintendent. *Id.* The State alleged that the defendants had failed to follow statutory competitive bidding requirements found in the then-existing Mississippi Code Sections 31-7-39, 31-7-41, 31-7-43, 31-7-45 and 37-11-27 (1972), and that the defendants had violated the conflict-of-interest statute found at Section 37-11-27. *Id.* at 1273-1274. The complaint alleged that all defendants were liable as individuals and on their official bonds for penal damages. *Id.* at 1274.

¶51.    The defendants filed a motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6), contending that the statutory authority that provided the basis for the complaint had been repealed on January 1, 1981, the year after the alleged activity. *Id.* at 1274. Both parties also later moved for summary judgment. *Id.* As to the claims founded on the

statutory competitive bid rule, the chancery court granted partial summary judgment in favor of the defendants because of the repeal of the statute. *Id.* The chancery court granted partial summary judgment in favor of the State as to the conflict of interest claim and awarded damages and assessed fines. *Id.* The State appealed and the defendants cross-appealed. *Id.*

¶52.    The *Ladner* appeal turned on whether the Court considered the three-bid requirement as it existed in 1980 or as it stood repealed at the beginning of 1981. *Id.* at 1275. As the Court wrote, "[T]he School Board without question violated the three bid requirement. If Section 31-7-43 as it read in 1980 is enforceable, the judgment below must be reversed. On the other hand, with the exception to be noted in Section IV below, the School Board complied with the statutes as they read today." *Id.* After a lengthy and detailed review of the law regarding the vesting of contract duties and other interests in the State, the *Ladner* Court held that for the State to proceed under a repealed statute, "the right the State seeks to assert [must] be based upon some contract, property or other vested right, that the right have being as a right notwithstanding the statute's nonbeing." *Id.* at 1277. In other words and importantly, the *Ladner* Court's holding that the trial court must rely on the latter version of the bidding statutes was based on the law surrounding the vesting of contractual duties, which would have no application in criminal cases. It is here that the brief, unexplained mention of *Allen* occurs. To give context, we quote below a few sentences before the language concerning *Allen* and the single sentence mentioning it:

> The legislature of this state, as the principal exponent of the public policy of this state, has declared that the three bid requirement will no longer obtain in emergency public works circumstances. Because the statute has been changed, and because this Court is obliged to act consistent with a rational reading of

the legislative declaration, we have as a matter of reason, precedent and choice determined that we should stay our hand from enforcement of that which has been repealed. Put more specifically, we accord a prior consideration to the public policy pronouncement of the state qua legislature, wholly interdicting the actions of the State qua its attorney general and its auditor.

But it is not that the statute did not exist in 1980; rather, our perception of and respect for the purpose and effect of the subsequent legislative directive is such that we will no longer enforce the pre-1981 statute. Any intimation to the contrary found in *Allen v. State*, 440 So. 2d 544, 545–46 (Miss.1983) is simply in error.

*Id.* at 1276-1277. The above-quoted instance is the entirety of the discussion of *Allen* that can be found in *Ladner*. The treatment of *Allen* hardly suffices as an overruling of the case. The "matter of reason, precedent and choice" to which the Court refers in the above-quoted language itself refers to the very lengthy discussion of the vesting of contractual rights. The *Ladner* holding therefore resulted from a specific, specialized area of the law regarding vested interests of the State in contract law. The *Ladner* Court was not overruling *Allen*, but rather was holding that *Allen* did not obviate the previously discussed law of vested contractual rights.

¶53. The next participant in the game of Telephone, to in whose ear the *Ladner* Court whispered its message disclaiming "any intimation" of a contrary notion from *Allen*, was the Court that considered the case of *West v. State*, 725 So. 2d 872 (Miss. 1998), *abrogated on other grounds by Jackson v. State*, 860 So. 2d 653 (Miss. 2003). In *West*, the defendant, Tracy Lee West, stood convicted of capital murder and had been sentenced to death. *West*, 725 So. 2d at 876. The Court affirmed his conviction but reversed the death sentence because the trial court had failed to instruct the jury that it could consider the alternate

26

sentence of life without parole. *Id.* Between the time that *West* committed the underlying murder of a store clerk in Gulfport, Mississippi, and his trial, the Legislature had amended the capital murder sentencing statutes to allow for a possible sentence of life imprisonment without the possibility of parole. *Id.* at 877 (¶ 7). On appeal, West argued that the trial court had erred in refusing to instruct the jury, in accordance with the amended statutes, that it could choose to sentence him to life without parole. *Id.*

¶54. The statutes at issue were Section 97-3-21 and 99-19-101. The *West* Court relied on the plain language of Section 97-3-21 and held that the Legislature intended the option of life without the possibility of parole to apply to any defendant who was "charged, tried, convicted, and sentenced to life imprisonment" after July 1, 1994. *Id.* at 878. The *West* Court first wrote that Section 99-19-1, at issue in the case *sub judice*, had no application because "Section 99-19-1 provides that all laws prescribing punishment will continue to govern the penalties of all crimes committed under them, notwithstanding amendatory or repealing statutes, *unless otherwise especially provided in such statutes*." *Id.* at 878-879 (¶ 16). As noted above, the *West* Court held that Sections 97-3-21 and 99-19-101 provided otherwise.

¶55. The dissent contends that the amendment to today's pertinent statute, Section 97-17-70, also provides otherwise, but the dissent merely cites the amendment's effective date and the occurrence of the word "conviction" in the text of the statute. The 1994 act amending Section 97-3-21, at issue in *West*, explicitly provided that it would apply "to any case in which pre-trial, trial or resentencing proceedings take place after July 1, 1994," 1994 Miss.

Laws ch. 566 § 5, and contained a separate section setting a general effective date of July 1, 1994. 1994 Miss. Laws ch. 566 § 6. The section establishing the general effective date did not "otherwise provide" for the applicability of Section 99-19-1. Rather, the specific directive that applied the changes to cases with proceedings that took place after July 1, 1994, did so. The act that amended Section 97-17-70 contained no such specific provision and contained only a general effective date of July 1, 2014. *See* 2014 Miss. Laws ch. 457. The distinction also is an important difference, and unlike the statute at issue in *West*, no part of the amendments at issue today directs that Section 99-19-1 does not apply.

¶56. The *West* Court's discussion of *Allen* and *Ladner* was *dicta*. It occurred after the Court had reached its holding based on the above-described discussion of statutory interpretation and after it had discussed whether the new option of life without parole violated the prohibition against *ex post facto* laws. *Id.* at 880 (¶ 20). The Court included the discussion in response to an argument advanced by the State, that under Section 99-19-33 and *Allen*, the trial court had the option of following the earlier sentencing scheme. *West*, 725 So. 2d at 881 (¶ 29). Section 99-19-33 read then, as now, as follows:

> If any statute shall provide a punishment of the same character, but of milder type, for an offense which was a crime under pre-existing law, then such milder punishment may be imposed by the court but no conviction, otherwise valid, shall be set aside and new trial granted merely because of an error of the court in fixing punishment. Such error shall only entitle the party injured to vacate or reverse the judgment as to the punishment, and the legal punishment shall then be imposed by another sentence based on the original conviction or plea of guilty.[3]

---

[3]Indeed, Section 99-19-33 applies not to situations in which the punishment for the *same* crime has been changed, but in which the Legislature has created a new, second crime that criminalizes the same behavior. *See* Miss. Code Ann. § 99-19-33 ("If any statute shall

28

The *West* Court wrote that the second sentence of Section 99-19-33 changed the word "may" in the first sentence into "shall." *Id.* at 881 (¶ 30). "Thus, it appears that the use of 'may' in the first sentence in fact intends to convey 'shall,' for there can be no discretion to decline to apply an amendatory provision if declining to do so results in reversible error." *Id.* In doing so, the *West* Court made two mistakes. First, it assumed that the phrase "error of the court in fixing punishment" found in the second half of the first sentence of Section 99-19-33 meant that it was error to sentence a defendant according to an earlier statute in place when the defendant committed the crime in question. Nothing in the statute so states, and there are certainly other errors that can be made in affixing punishment.

¶57.    Second, the *West* Court's striking the word "may" in favor of "shall" results in the judicial abrogation of Section 99-19-1, which explicitly obligates the trial court to do that which the *West* Court rewrote Section 99-19-33 to prohibit. Sections 99-19-1 and 99-19-33 were enacted together in a special session of the Legislature in 1902. 1902 Miss. Laws ch. 102-103. Together, they comprised the entirety of Senate Bill 3, described as "AN ACT to prevent unintended defeat of criminal prosecutions and of enforcement of penalties by statutory changes of criminal laws."[4] *Id.* In the Code of 1942, the Code of 1930, Hemingway's 1917 Code, and the Code of 1906, the two sections were printed one after the other, as enacted. "[L]egislative intent must be determined from the total language of the act

---

provide a punishment of the same character, but of milder type, *for an offense which was a crime under pre-existing law. . . .*") (emphasis added)). Accordingly, it has no application to the instant case, where the issue is a change in punishment for a single crime.

[4]Even the title of the act indicates that the purpose of both sections was to *preserve* criminal prosecutions that had proceeded under prior versions of applicable statutes.

and not from one section thereof considered apart from the remainder." *Lewis v. Hinds Cty. Circuit Court*, 158 So. 3d 1117, 1122 (¶ 13) (Miss. 2015). When it edited Section 99-19-33 to substitute the word "shall" for the word "may" in the first sentence, the *West* Court erred and improperly rewrote the statute in a way that disregarded the total language of the act, which the Court had no authority to do. As discussed above, the second sentence of Section 99-19-33 does not contradict the first, as other possible errors in sentencing exist.

¶58.   In short, we lack the constitutional authority to do what the *West* Court did. Accordingly, we overrule *West* to the extent that it improperly changed the "may" to "shall," thereby issuing a holding that would hold trial courts in error for sentencing a defendant under the older of two sentencing statutes.

¶59.   The *West* Court further compounded its problems in its treatment of *Allen.* The Court wrote as follows:

> Furthermore, the State's reliance on *Allen v. State*, 440 So. 2d 544 (Miss.1983) is of no avail. *Allen* is the only case which interprets § 99-19-33 to afford trial judges the discretion to apply the pre-amended statute. That holding, that trial courts had discretion to enforce a pre-amended version of a statute, was expressly overruled in *State ex rel. Pittman v. Ladner*, 512 So. 2d 1271, 1277 (Miss.1987) . . . .

*West*, 725 So. 2d at 882 (¶ 31). However, as shown above, the *Ladner* Court hardly overruled *Allen*. Secondly, the *Allen* Court did not so much interpret Section 99-19-33 to afford trial judges the discretion to enforce an earlier sentencing statute, as it acknowledged that Section 99-19-1 allowed trial judges to do so. *Allen*, 440 So. 2d at 546. Unlike the *West* Court, the *Allen* Court studied the history of the two sections, noting that both dated back to 1902, and reached an interpretation that gave harmonious effect to the whole 1902 act.

30

Finally, the *West* Court incorrectly described *Allen* as "the only case which interprets § 99-19-33 to afford trial judges the discretion to apply the pre-amended statute." *West*, 725 So. 2d at 882 (¶ 31). At least twice before, in cases cited by the *Allen* Court, the Court had interpreted Sections 99-19-1 and 99-19-33 together to allow trial judges the discretion to apply the earlier version of the statute. *See Lampley v. State*, 308 So. 2d 87, 90 (Miss. 1975) (after considering Section 99-19-33, the Court held that Section 99-19-1 "expressly provided that the previous law will remain in effect for the purpose of providing punishment, unless otherwise specially provided in the new statute"); *see also Byrd v. State*, 165 Miss. 30, 143 So. 852, 853 (1932).

¶60.    The final stop, before the *Allen* Court's Section 99-19-1 holding reaches us in today's case, is *Daniels v. State*, 742 So. 2d 1140 (Miss. 1999). *Daniels* cemented the above-described missteps into our jurisprudence. In *Daniels*, a jury convicted Richard Daniels of capital rape. The Coahoma County Circuit Court sentenced him to serve a life term. *Id.* at 1141 (¶ 3). At the time of the commission of Daniels's crime, Mississippi Code Section 97-3-65 (1994) provided for either a sentence of death or a sentence of life imprisonment. *Id.* at 1144 (¶ 13). After the crime but before sentencing, the Legislature amended the statute to provide for a sentence of "imprisonment for life in the State Penitentiary or such lesser term of imprisonment as the court may determine, but not less than twenty (20) years." *Id.* (citing Miss. Code Ann. § 97-3-65(2)(c) (Supp. 1998)). The *Daniels* Court cited the *West* Court's opinion and held that a trial judge has no discretion but to sentence a defendant to the lesser penalty when the Legislature so amends the statute after the commission of a crime.

*Id.* at 1145 (¶ 17). The ***Daniels*** Court relied on the holding in ***West***, in which the Court noted the purported overruling of ***Allen*** by the ***Ladner*** Court. However, as detailed above, it is at best a stretch to consider the ***Ladner*** Court's brief and ambiguous treatment of ***Allen*** an overruling based largely on a discussion of the vesting of contractual rights. Moreover, the ***West*** Court's holding, as the Court continues to follow it, impermissibly abrogated Section 99-19-1, which was part of the same legislative act that created Section 99-19-33. As we do with ***West***, we overrule ***Daniels*** to the extent that it holds that Section 99-19-33 requires a sentencing court to apply a newer sentencing statute instead of the sentencing scheme in effect when a crime was committed.

¶61.    Once again, the Court indeed may overrule its own cases, but we have no authority to abrogate, disregard, or edit statutes enacted by the Legislature. The ***West*** Court's *dicta* regarding ***Allen*** and the two code sections largely relied on a clearly erroneous reading of ***Ladner*** and resulted in editing one statute, Section 99-19-33, in a way that abrogated another, Section 99-19-1. Again, Sections 99-19-1 and 99-19-33 were Parts I and II, respectively, of the same act in 1902. Both sections comprised the entirety of the act, and in previous versions of the Mississippi Code, were codified one after the other. Section 99-19-1 clearly requires the trial court to sentence an offender under a sentencing statute in place at the time of the crime. Accordingly, the trial judge properly sentenced Wilson, and the instant issue has no merit.

¶62.    **CONVICTION OF RECEIVING STOLEN PROPERTY AND SENTENCE OF TEN (10) YEARS, THREE (3) YEARS TO SERVE, WITH REMAINING BALANCE SUSPENDED WITH POST-RELEASE SUPERVISION FOR FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS,**

**AFFIRMED. SAID SENTENCE SHALL RUN CONSECUTIVELY WITH SENTENCE IN CAUSE NUMBER 11,0059 CRP. APPELLANT SHALL PAY COURT COSTS IN THE AMOUNT OF $104 AND STATE ASSESSMENTS IN THE AMOUNT OF $280.50.**

**DICKINSON AND RANDOLPH, P.JJ., LAMAR AND BEAM, JJ., CONCUR. MAXWELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND KING, J.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶63. I concur in the majority's affirmance of Wilson's conviction for receiving stolen property. I respectfully dissent in part, however, because I would reverse and remand the case to the Circuit Court of Warren County for resentencing. The trial court was without authority to sentence him to any term of imprisonment which exceeded five years under the amended version of Section 97-17-70(4) (Rev. 2014).

¶64. In its prior version, Mississippi Code Section 97-17-70(3) provided that any person "who shall be convicted of receiving stolen property which exceeds Five Hundred Dollars ($500.00) in value shall be committed to the custody of the State Department of Corrections for a term not exceeding ten (10) years or by a fine not more than Ten Thousand Dollars ($10,000.00) or both." Miss. Code Ann. § 97-17-70(3) (Rev. 2006). Section 97-17-70 changed, effective July 1, 2014, to provide that the value of the stolen property be "One Thousand Dollars ($1,000.00) or more, but less than Five Thousand Dollars ($5000.00) . . . ." Miss. Code Ann. § 97-17-70(4) (Rev. 2014). The penalty for the offense of receiving stolen property was altered to "imprisonment in the custody of the State Department of

33

Corrections for a term not exceeding five (5) years or by a fine of not more than Ten Thousand Dollars ($10,000.00) or both." *Id.*

¶65.    Mississippi Code Section 99-19-33 provides that, "[i]f any statute shall provide a punishment of the same character, but of milder type, for an offense which was a crime under pre-existing law, then such milder punishment may be imposed by the court . . . ." Miss. Code Ann. § 99-19-33 (Rev. 2015). This Court has held that "when a statute is amended to provide for a lesser penalty, and the amendment takes effect before sentencing, the trial court *must* sentence according to the statute as amended. Any precedent holding otherwise is in error." *Daniels v. State*, 742 So. 2d 1140, 1145 (Miss. 1999) (emphasis added).

¶66.    In *Daniels*, this Court reversed and remanded Daniels's life sentence for capital rape because, before sentencing had taken place, the applicable statute, which originally prescribed a mandatory penalty either of death or life imprisonment, had been amended to provide a "sentence of 'imprisonment for life in the State Penitentiary or such lesser term of imprisonment as the court may determine, but not less than twenty (20) years.'" *Daniels*, 742 So. 2d at 1144 (quoting Miss. Code Ann. § 97-3-65(2)(c) (Supp. 1998)). *See Johnson v. State*, 260 So. 2d 436, 439 (Miss. 1972) ("[W]hen the facts which constitute a criminal offense may fall under either of two statutes, or when there is substantial doubt as to which of the two is to be applied, the case will be referred to the statute which imposes the lesser punishment.")

¶67.    Here, the crime occurred April 2, 2012. Wilson was indicted in January 2013 under the prior version of Section 97-17-70, which prescribed a maximum penalty of ten years'

imprisonment. The amendment to Section 97-17-70, which incorporated the lesser penalty of up to five years' imprisonment, became effective July 1, 2014. Wilson was tried and convicted in September 2014. Wilson's counsel argued at sentencing that the new version of the statute should be applied and the trial court rejected the argument: "this action happened prior to the change of the law and until the Supreme Court tells us different the Court will stand by the original elements in sentencing." Wilson was sentenced on September 17, 2014, to "[t]en years in the custody of the Mississippi Department of Corrections, three (3) years to serve, with remaining balance suspended with post release supervision for five (5) years . . . ." As such, under Section 99-19-33 and *Daniels*, Wilson argues that his sentence is illegal, that his sentence should be vacated, and that the case should be remanded for resentencing.

¶68. The State urges us to consider Mississippi Code Section 99-19-1, which provides:

> No statutory change of any law affecting a crime or its punishment or the collection of a penalty shall affect or defeat the prosecution of any crime committed prior to its enactment, or the collection of any penalty, whether such prosecution be instituted before or after such enactment; and all laws defining a crime or prescribing its punishment, or for the imposition of penalties, shall be continued in operation for the purpose of providing punishment for crimes committed under them, and for collection of such penalties, notwithstanding amendatory or repealing statutes, unless otherwise specially provided in such statutes.

Miss. Code. Ann. § 99-19-1 (Rev. 2015). The State argues that "Section 99-19-1 is clear that the applicable sentence at the time a crime is committed should be used. And the language in § 99-19-33 clearly states that a milder punishment from an amended statute may be imposed."

35

¶69. The majority opinion agrees with the State and engages in an exegesis of this Court's jurisprudence, concluding that, while this "Court indeed may overrule its own cases, . . . we have no authority to abrogate, disregard, or edit statutes enacted by the Legislature." Maj. Op. ¶ 61. It is true that this Court has no authority, absent a determination of unconstitutionality, to ignore duly enacted statutes.

¶70. In *West v. State*, this Court considered whether the trial court had committed reversible error by refusing the defendant's "repeated requests to apply the amendments to Miss. Code Ann. §§ 97-3-21 and 99-19-101, and to instruct the sentencing jury that it could sentence [the defendant] to life imprisonment without parole." *West v. State*, 725 So. 2d 872, 877 (Miss. 1998), *abrogated on other grounds by Jackson v. State*, 860 So. 2d 653 (Miss. 2003). Prior to the defendant's trial, Section 97-3-21 was amended to allow the sentencing jury to consider, in addition to penalties of either death or life imprisonment *with* the possibility of parole, the penalty of life imprisonment without the possibility of parole. *Id.* The amending act provided that "'[t]he provisions of this act shall apply to any case in which pre-trial, trial or resentencing proceedings take place after July 1, 1994.'" *Id.* (quoting 1994 Miss. Laws ch. 566 § 5). The defendant's trial commenced on August 8, 1994. *Id.*

¶71. This Court observed that "Section 99-19-1 provides that all laws prescribing punishment will continue to govern the penalties of all crimes committed under them, notwithstanding amendatory or repealing statutes, *unless otherwise especially provided in such statutes*." *Id.* at 878-79 (emphasis in original). Because the "plain meaning of the language in § 97-3-21 indicates that the legislature intended any defendant whose pretrial,

trial, or sentencing proceedings commenced after July 1, 1994 to have his sentencing juries instructed on the sentencing options of life, life without parole, or death," this Court held that "the proscriptions of § 99-19-1 do not preclude the application of the amendments" to the defendant. *Id.* at 878-79.

¶72.    In the present case, Section 97-17-70 specified that it was to be effective "from and after July 1, 2014." Miss. Code Ann. § 97-17-70. Subsection 4 of Section 97-17-70 specifically addresses "[a]ny person who shall *be convicted* of receiving stolen property . . . ." Miss. Code Ann. § 97-17-70(4) (emphasis added). Wilson was *convicted* in September 2014. Therefore, as in *West*, by its express language, Section 99-19-1 "does not preclude the application of the amendments" to Wilson.

¶73.    The majority discredits the *West* Court's interpretation of Section 99-19-33 and determines that it does not apply in this case. Maj. Op. ¶ 56, n.3. The Court in *West* considered the totality of Section 99-19-33 as follows:

> If any statute shall provide a punishment of the same character, but of milder type, for an offense which was a crime under pre-existing law, then such milder punishment may be imposed by the court but no conviction, otherwise valid, shall be set aside and new trial granted merely because of an error of the court in fixing punishment. Such error shall only entitle the party injured to vacate or reverse the judgment as to the punishment, and the legal punishment shall then be imposed by another sentence based on the original conviction or plea of guilty.

*West*, 725 So. 2d at 881 (quoting Miss. Code Ann. § 99-19-33). The Court held that Section 99-19-33 "does not grant a judge discretion" in sentencing, because "[a]lthough the language seems to suggest discretion in stating that the lighter sentence *may* be imposed by the court, the subsequent sentence states that a judge's failure to impose the lighter sentence is error"

37

and that "such error entitles the party injured to a vacation or reversal of the punishment portion of the judgment." *West*, 725 So. 2d at 881.

¶74. This Court referenced the rule that "while permissive language of a statute is presumably interpreted in its ordinary sense, it will be interpreted as mandatory where the context compels such a construction." *West*, 725 So. 2d at 881 (citing *Leflore Bank & Trust Co. v. Leflore County*, 202 Miss. 552, 558, 32 So. 2d 744, 746 (1947)). According to this Court, "there can be no discretion to decline to apply an amendatory provision if declining to do so results in reversible error." *West*, 725 So. 2d 881.

¶75. The majority argues that "striking the word 'may' in favor of 'shall' results in the judicial abrogation of Section 99-19-1, which explicitly obligates the trial court to do that which the *West* Court rewrote Section 99-19-33 to prohibit." Maj. Op. ¶ 57. With respect, this Court did not strike the word "may" and substitute the word "shall" in *West*, but rather engaged in a reasonable interpretation of a self-contradictory statute. In its first sentence, Section 99-19-33 provides that the trial court has discretion with regard to sentencing and, in the second sentence, it provides that erroneous sentencing entitles the defendant to a reversal of the punishment and not the reversal of the conviction. Furthermore, as discussed above, Section 99-19-1 does not apply to this case, nor did it apply in *West*, because the respective statutes in issue incorporated an effective date, after which the respective defendants were tried, convicted, and sentenced.

¶76. At the very least, the rule of lenity applies to a patently ambiguous statute: "penal statutes are to be interpreted *strictly against the state* and construed *liberally in favor of the*

38

*accused*. Where a statute is patently ambiguous, it must be interpreted in favor of the accused." ***McLamb v. State***, 456 So. 2d 743, 745 (Miss. 1984) (citing ***State v. Russell***, 358 So. 2d 409 (Miss. 1978); ***Carter v. State***, 334 So. 2d 376 (Miss. 1976); ***Walton v. State***, 219 Miss. 72, 68 So. 2d 87 (1953); ***Terry v. State***, 172 Miss. 303, 160 So. 574 (1935)) (emphasis added).

¶77. While I agree that Wilson's conviction for receiving stolen property should be affirmed, I decline to join the majority's refusal to apply the controlling law with regard to his sentence. Accordingly, I dissent in part.

**WALLER, C.J., AND KING, J., JOIN THIS OPINION.**