# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CP-00970-COA

**DON R. LEWIS A/K/A DON LEWIS A/K/A DON RUSSELL LEWIS**                              APPELLANT

v.

**STATE OF MISSISSIPPI**                              APPELLEE

DATE OF JUDGMENT:                06/06/2018
TRIAL JUDGE:                     HON. ANTHONY ALAN MOZINGO
COURT FROM WHICH APPEALED:       PEARL RIVER COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          DON R. LEWIS (PRO SE)
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: BARBARA WAKELAND BYRD
NATURE OF THE CASE:              CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                     REVERSED AND REMANDED - 02/11/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., WESTBROOKS AND McCARTY, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.     Don Lewis pleaded guilty to fondling a child and was sentenced to fifteen years in the custody of the Mississippi Department of Corrections (MDOC), with four years to serve and eleven years of post-release supervision (PRS). It was later alleged that Lewis had violated the terms of his PRS. The Pearl River County Circuit Court held a revocation hearing and revoked Lewis's PRS. Lewis filed a motion for post-conviction relief (PCR), claiming his probation was unlawfully revoked. The circuit court denied Lewis's motion. Aggrieved, Lewis appeals. After reviewing the record, we reverse and remand to the circuit court for an evidentiary hearing.

**FACTS AND PROCEDURAL HISTORY**

¶2.     In 2007, Lewis was indicted for and pleaded guilty to the fondling of a child in violation of Mississippi Code Annotated section 97-5-23(1) (Supp. 1998). He was sentenced to fifteen years in the MDOC's custody, with four years to serve and eleven years of PRS. Lewis was also ordered to pay a $1,500.00 fine and $654.00 in restitution. In May 2015, an MDOC supervising officer alleged that Lewis violated the terms of his PRS by being arrested once for simple-assault domestic violence and twice for DUI, as well as for failing to pay his fines. The circuit court held a revocation hearing.

¶3.     At the revocation hearing, Lewis admitted to the arrests. No further testimony was provided concerning them, and the record includes no other information about them. Regarding the fines, the record is equally unclear. At the close of the hearing, the circuit court found Lewis "guilty," revoked his PRS, and reinstated the seven-year and five-month balance of his sentence. On March 28, 2018, Lewis filed a PCR motion claiming that his probation had been unlawfully revoked. The circuit court denied Lewis's PCR motion on June 5, 2018. Lewis filed his notice of appeal on July 2, 2018.

¶4.     Lewis raises five issues on appeal, but they can be properly addressed with two questions. First, did the circuit court err by improperly applying the provisions of Mississippi Code Annotated section 47-7-37 (Supp. 2014)?  Second, did the circuit court err by revoking Lewis's PRS?

**STANDARD OF REVIEW**

¶5.     This Court reviews the denial of a PCR motion under an abuse-of-discretion standard.

*Brown v. State*, 864 So. 2d 1058, 1059 (¶7) (Miss. Ct. App. 2004) (citing *McClinton v. State*, 799 So. 2d 123, 126 (¶4) (Miss. Ct. App. 2001)). A trial court's denial of a PCR motion will not be reversed "absent a finding that the trial court's decision was clearly erroneous." *Stokes v. State*, 199 So. 3d 745, 748 (¶7) (Miss. Ct. App. 2016) (citing *Wilson v. State*, 76 So. 3d 733, 735 (¶9) (Miss. Ct. App. 2011)). This Court reviews issues of law de novo. *Id*.

## DISCUSSION OF ISSUES AND ANALYSIS

### I.      Section 47-7-37

¶6.     Lewis argues that he should benefit from the 2018 amendment to section 47-7-37. The amendments changed the focus in revocations to the number of prior revocations, rather than the number of technical violations. For Lewis to benefit,[1] the amendment would have to be applied retroactively to his revocation hearing in June 2015. Mississippi Code Annotated section 99-19-1 (Rev. 2015) provides as follows:

> No statutory change of any law affecting a crime or its punishment or the collection of a penalty shall affect or defeat the prosecution of any crime committed prior to its enactment, or the collection of any penalty, whether such prosecution be instituted before or after such enactment; and all laws defining a crime or prescribing its punishment, or for the imposition of penalties, shall be continued in operation for the purpose of providing punishment for crimes committed under them, and for collection of such penalties, notwithstanding amendatory or repealing statutes, unless otherwise specifically provided in such statutes.

Our Supreme Court has held that "all laws prescribing punishment for a crime remain in effect for the purpose of ascribing punishment 'unless otherwise specially provided' in a

---

[1] There is not sufficient information in the record to determine if Lewis would benefit at all from a retroactive application of the 2018 amendment. Such a determination is not required of this Court because Lewis's second issue is dispositive concerning his appeal.

3

newly enacted statute." *Wilson v. State*, 194 So. 3d 855, 867 (¶42) (Miss. 2016) (quoting § 99-19-1). When the subject statute was amended by the Legislature, it did not express that the amendment should be retroactively applied. Lewis's contention that the amendment should apply in his case is without merit.

## II. Revocation of Lewis's PRS Due to Arrests

¶7. Lewis next argues the circuit court erred by revoking his PRS after adjudicating him "guilty" of multiple offenses and violations without sufficient evidence. In its "Order Denying Motion for Post-Conviction Collateral Relief," the circuit court stated that "[t]he defendant's own admission is a sufficient basis to find he violated the terms of his PRS." The circuit court's order also states that Lewis admitted "he had not paid his fees and fines as ordered." The record is unclear as to whether such a statement concerning Lewis's fines is accurate. Lewis contends he paid the fines in full with the financial assistance of his mother. There was no evidence or testimony to support any allegation that Lewis had not paid his fines. Lewis provided the only testimony at his revocation hearing. No further evidence or details concerning the arrests were provided. The sole foundation for the revocation of Lewis's PRS was his admission that he was arrested three times while on PRS and the circuit court's apparent issue concerning Lewis's fines.

¶8. This Court has stated that the "mere arrest of a probationer is not a violation of probation." *Brown v. State*, 864 So. 2d 1058, 1060 (¶9) (Miss. Ct. App. 2004). This Court has more specifically held that when alleged criminal activity is the basis for revocation, the State "must show proof of an actual conviction, or that a crime has been committed and that

4

it is more likely than not that the probationer committed the offense." *Id*. A review of the circuit court's order demonstrates that the circuit court did not meet that standard.

¶9.	The instant case is factually similar to *Brown* in that the only basis for the revocation of Lewis's PRS is his own admission that he was arrested. The circuit court did not conduct any evidentiary inquiries of Lewis or anyone else. After Lewis admitted to being arrested, the circuit judge asked the following question, "You, also, had a guilty conviction on drug charges in 1993. And by your own admission, your mother's check is paying your fees and fines and she's having to keep you in compliance with probation. I have one question for you. What good are you to anybody?" Lewis attempted to explain and answer the question concerning the fines by stating he had lost his job. The circuit judge asked no further questions but instead stated the following, "It seems to me, if you want to know my honest opinion, your mother would be a lot better off with you in the penitentiary. Your probation is revoked. That way, she doesn't have to pay your fees and fines." The circuit court failed to reference any evidentiary or factual basis for revoking Lewis's PRS because of the status of his fines. In fact, the only information contained in the transcript, as evidenced by the exchange between the circuit judge and Lewis, arguably demonstrates that the fines were current. The only facts that the circuit judge managed to articulate was that Lewis's mother had been helping him pay the fines after he had lost his job. Lewis attempted to advise the circuit court that his mother would not be responsible for his fines any longer, but the circuit judge stopped him and eventually concluded the proceeding with the following statement:

> And you need to be able to get out and keep up with that and everything else and doctors suggesting surgery. What I heard from you in that letter is nothing

is your fault, never has been your fault, everything just came upon you. And had you gotten up and accepted responsibility for being a drain on your poor old sick mother, I might have had a different attitude.

You're adjudicated guilty. Your probation is revoked and you're sentenced to serve the remainder of the term left on probation, this being two felony convictions and now a revocation, I would give you the full 15 years. So you're very fortunate that I could only give you seven years and five months. You're dismissed.

The circuit court made no attempt to base the revocation of Lewis's PRS within the appropriate standard. In fact, the record contains no information regarding the arrests and fines other than what Lewis provided. There was no finding, or even an attempted finding, that it was more likely than not that Lewis committed any of the three offenses referenced in the trial court proceedings.

¶10. Lewis may well have committed all three of the offenses referenced in the revocation petition, but the circuit court committed error by revoking Lewis's PRS on the scant information that was advanced at the revocation hearing. Mere arrest cannot be the basis for probation revocation. There was no basis to find that it was more likely than not that Lewis had committed any of the offenses listed in the revocation petition.[2]

¶11. Finding this failure to be error, we reverse the circuit court's judgment and remand this case for further proceedings consistent with this opinion.

¶12. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, TINDELL,**

---

[2] In its brief, the State concedes that "[t]he record in this case is insufficient to support the trial court's decision to revoke Lewis'[s] probation." The State also says, "[T]hough it is probable that Lewis did commit subsequent crimes and, therefore, violated the terms of his probation, mere arrest cannot be the basis for a probation revocation."

6

**McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ. CONCUR.**