# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01185-COA

**WILTON WILLIAMS II**                                                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/12/2018 |
| TRIAL JUDGE: | HON. DAVID H. STRONG JR. |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | DEE BATES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/07/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1.     Following a car accident, Wilton Williams was charged with driving under the influence (DUI)—his fourth offense. Williams was later convicted and sentenced to ten years in the custody of the Mississippi Department of Corrections, with two years suspended and eight years to serve, followed by two years of post-release supervision. Williams now appeals, asserting that he was denied a right to a fair trial based on the State's closing argument. Finding no error, we affirm.

### FACTS

¶2.     On March 7, 2017, Officer Landon Marrs, was dispatched to a one-car accident in

Pike County. The driver had wrecked the vehicle into a bridge. On his way to the accident, Officer Marrs spotted three men walking in the opposite direction of the scene. Upon arrival, the scene was abandoned. Officer Marrs suspected that the three men were involved, so once another officer arrived, Officer Marrs went searching for the three men. Officer Marrs approached the nearest house, which was in the same direction as the three men walking, and inquired about the accident to see if the driver was there. Moments later, Williams emerged from the house and admitted he had been the driver of the vehicle.

¶3. Officer Marrs needed to complete an accident report, so he escorted Williams and the other two men back to the scene. Officer Marrs testified that he smelled hints of marijuana and an intoxicating beverage on Williams, and the other officer, Allen Fry, agreed. The officers asked Williams about the smells. Williams admitted to drinking the night before and into the morning but attributed the marijuana smell to having been around others who were smoking marijuana earlier that day. Officer Fry testified that Williams was stuttering and mumbling and that he could not fully understand Williams's speech.

¶4. Officer Fry placed Williams under arrest for unrelated charges (driving with a suspended license, failure to keep a proper lane, and no insurance) but remained suspicious that Williams was driving under the influence. As a result, Officer Fry administered a field sobriety test at the Pike County Sheriff's Office. Williams's field sobriety test produced multiple clues for Officer Fry, who testified that Williams lost his balance and made several other mistakes during the field sobriety test. Because of those observations and what Officer

2

Fry described as a "totality of the circumstance," Officer Fry charged Williams with DUI, which was Williams's fourth offense.

¶5.     Williams consented to giving a urine sample to be tested for drugs and alcohol. At trial, John Stevenson of the Mississippi Forensics Laboratory, who had tested Williams's urine sample, was called to testify. On direct examination, the State questioned Stevenson on the test results:

> [STATE]:     Okay. And what controlled substances were in the defendant's—the sample that you tested?
>
> [STEVENSON]:     Screened positive for the cannabinoids, sir, which is marijuana and cocaine metabolites.
>
> [STATE]:     Okay. So cocaine metabolites or cocaine and metabolites?
>
> [STEVENSON]:     The conformational analysis that I had performed indicated that it had nicotine, caffeine, cocaine metabolites and the metabolite of marijuana as well.

The defense did not cross-examine Stevenson.

¶6.     Williams testified that the accident occurred due to an improperly installed tire and slippery roads from the rain. He also testified that he drank a "sip" of beer and smoked a cigarette in the thirty minutes that passed between leaving and returning to the accident scene. Williams denied being under the influence when he crashed into the bridge.

¶7.     During closing arguments, the prosecutor repeatedly stated that Williams was under the influence at the time of the accident. Midway through his argument, the prosecutor stated the following:

3

We have testimony, again, that he had cocaine and metabolites and marijuana in his urine. He had consumed it and it had been in there long enough to start metabolizing. But still not long enough that it had actually gotten rid of it. That shows, ladies and gentleman, that he was under the influence of these controlled substances.

¶8. Williams's counsel objected to the prosecutor's statement and requested a mistrial, which the court denied. Instead, the trial court instructed the jury to disregard "any argument, statement, or remark [that] has no basis in the evidence." Williams was convicted of his fourth DUI offense and sentenced accordingly. On appeal, Williams seeks a new trial and claims that the prosecution's misplaced conclusions were inappropriate and prejudicial to his case.

**ANALYSIS**

¶9. To determine whether there was prosecutorial misconduct during closing arguments, appellate courts must ask "whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Wilson v. State*, 194 So. 3d 855, 864 (¶30) (Miss. 2016). A prosecutor is "not allowed to employ tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury" or "state facts which are not in evidence." *Id*. Additionally, the prosecution cannot "appeal to the prejudices of men by injecting prejudices not contained in some source of the evidence." *Id*. (internal quotation mark omitted).

¶10. In his closing argument, the prosecutor stated that Williams was "under the influence" seven times before the defense objected. Williams argues the prosecutor's remarks were

inflammatory and prejudicial. After reviewing the record, we find there was sufficient evidence to show Williams was under the influence at the time of the accident. The evidence showed that Williams lost control of his vehicle and wrecked into a bridge. Officer Fry testified that when he first spoke with Williams, he could smell alcohol on his breath. He also stated that Williams "was stuttering, mumbling his words. Some of his speech was incoherent." Officer Fry further testified that Williams failed several parts of the field sobriety tests. Specifically, Williams "missed heel to toe on several steps. He also stopped walking on steps five and six on the first nine steps. He stepped offline on steps seven and eight on his nine steps back. And he did an improper turn." Officer Fry also administered the "one leg stand," which Williams failed because he could not stay balanced. Not only did Williams fail the field sobriety test, he also tested positive for cocaine metabolites and marijuana metabolites.

¶11. During closing argument, a "prosecutor may comment upon any facts introduced into evidence, and he may draw whatever deductions and inferences that seem proper to him from the facts." *Id*. (internal quotation mark omitted). Here, the prosecutor referred to Williams's failed field sobriety test and Williams's urine sample (containing cocaine and marijuana) to deduce that Williams was under the influence. Based on the facts that were introduced into evidence, we see no error in that deduction.

¶12. Further, any error in the prosecutor's remarks would be harmless. Prior to closing arguments, the trial court instructed the jury as follows:

5

> The evidence which you are to consider consists of the testimony and statements of the witnesses and the exhibits offered and received. You are also permitted to draw such reasonable inferences from the evidence as seem justified in the light of your own experience. Arguments, statements and remarks of counsel are intended to help you understand the evidence and apply the law, but are not evidence. If any argument, statement or remark has no basis in the evidence, then you should disregard it.

As evidenced above, the jury was properly instructed to disregard any statement made by the attorneys during closing arguments that had no basis in the evidence. "The law presumes that jurors follow the instructions given to them by the court." *Martin v. State*, 266 So. 3d 652, 664 (¶20) (Miss. Ct. App. 2018), *cert. denied*, 265 So. 3d 181 (Miss. 2019). Accordingly, we do not find the natural and probable effect of the prosecutor's statement created an unjust prejudice against Williams that resulted in a decision influenced by prejudice. This argument is without merit.

¶13. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, McCARTY AND C. WILSON, JJ., CONCUR.**